[No. A116504. First Dist., Div. Two. Jan. 10, 2008.]

In re KENNETH J., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
KENNETH J., Defendant and Appellant.

---

**COUNSEL**

Syda Kosofsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RICHMAN, J.**—Minor Kenneth J. appeals from the dispositional order of the juvenile court declaring him a ward and placing him on probation. This order was made after the court had conducted a jurisdictional hearing at which Kenneth had contested the allegations of criminal wrongdoing, and moved to suppress evidence obtained from a search by law enforcement authorities. At the conclusion of the jurisdictional hearing, the juvenile court denied the suppression motion and sustained the allegations that Kenneth had possessed an assault weapon (Pen. Code, § 12280, subd. (b)), ammunition for it (Pen. Code, § 12101, subd. (a)(1)), and had carried the weapon in public (Pen. Code, § 12031, subd. (a)(1)).

Kenneth's primary contention is that the juvenile court erred in failing to hold a hearing to determine if he qualified for the deferred entry of judgment (DEJ) procedure specified in Welfare and Institutions Code section 790 et seq.[1] Kenneth also contends that the dispositional order should be modified to reduce the restitution fine and administrative fees by $10. We conclude that neither contention has merit, and we affirm.

### BACKGROUND

■ The DEJ procedure is intertwined with the procedure of a delinquency proceeding; it is thus appropriate to review that procedure, and as well distilled by the Court of Appeal in *Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, 558–559 [133 Cal.Rptr.2d 544]: "The DEJ provisions of section 790 et seq. were enacted as part of Proposition 21, The Gang Violence and Juvenile Crime Prevention Act of 1998, in March 2000. The sections provide that in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment. Entry of judgment is deferred. After the successful completion of a term of probation, on motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges. The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court proceeding are sealed. (§§ 791, subd. (a)(3), 793, subd. (c).)

■ "Section 790 makes a minor eligible for DEJ if all the following circumstances exist: [¶] '(1) The minor has not previously been declared to be a ward of the court for the commission of a felony offense. [¶] (2) The

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

offense charged is not one of the offenses enumerated in subdivision (b) of Section 707. [¶] (3) The minor has not previously been committed to the custody of the Youth Authority.[2] [¶] (4) The minor's record does not indicate that probation has ever been revoked without being completed. [¶] (5) The minor is at least 14 years of age at the time of the hearing. [¶] (6) The minor is eligible for probation pursuant to Section 1203.06 of the Penal Code.' (§ 790, subd. (a)(1)–(6).)

■ "If the minor waives the right to a speedy jurisdictional hearing, admits the charges in the petition and waives time for pronouncement of judgment, the court may summarily grant DEJ or refer the matter to the probation department for further investigation. The department is required to take into consideration 'the defendant's age, maturity, educational background, family relationship, demonstrable motivation, treatment history, if any, and other mitigating and aggravating factors in determining whether the minor is a person who would be benefited by education, treatment, or rehabilitation.' (§ 791, subd. (b).) The trial court makes 'the final determination regarding education, treatment, and rehabilitation of the minor.' (*Ibid.*)" (Accord, *In re Luis B.* (2006) 142 Cal.App.4th 1117, 1121–1122 [48 Cal.Rptr.3d 581].)

With this framework in mind, the salient events and details may be summarized as follows:

On October 31, 2006, the District Attorney of Alameda County filed the petition in which it was alleged that Kenneth had committed various weapon-related offenses. That same day, the prosecuting attorney also filed a "Determination of Eligibility" that Kenneth was eligible for DEJ, and notified Kenneth and his guardian[3] of this determination in accordance with sections 791 and 792.

On November 1, 2006, the juvenile court ordered Kenneth detained. On November 8, counsel for Kenneth advised the court, "We'd like to set a jurisdictional hearing and notice of [a] search motion." The jurisdictional hearing was set for November 22. Kenneth filed his motion to suppress on November 15.

The jurisdictional hearing was held on November 22, 2006. It was contested. The evidence received at the hearing need not be summarized in

---

[2] Effective July 1, 2005, the California Youth Authority was redesignated the Department of Corrections and Rehabilitation, Division of Juvenile Facilities. (§ 1710, subd. (a).)

[3] Kenneth's father was incarcerated, and the whereabouts of Kenneth's mother were unknown. Kenneth was living at the time with his grandmother, who is described in the dispositional report as his guardian, and who appeared at all of the hearings described hereafter.

detail because it is neither challenged by Kenneth as insufficient nor is it relevant to the issues he raises on this appeal. Briefly, and viewed most favorably to the juvenile court's subsequent jurisdictional findings, the evidence showed that on October 27, 2006, a woman living in an apartment to which Kenneth had periodic access saw him holding what was described as a "machine gun." The next day, a police officer entered the apartment and found a loaded AK-47 concealed beneath a sweatshirt associated with Kenneth. Kenneth called a witness to present an exculpatory version.

After hearing argument, the court denied Kenneth's suppression motion. Kenneth's counsel then argued that there was reasonable doubt whether Kenneth was in possession of the weapon. The court sustained the allegations as noted above.[4]

On December 12, 2006, the Alameda Superior Court transferred the cause to San Francisco for disposition.

On January 8, 2007, the San Francisco Juvenile Court declared Kenneth a ward and placed him on probation; his custody was given to his grandmother under the supervision of the probation department.

Kenneth filed a timely notice of appeal.[5]

DISCUSSION

I

Kenneth states his major contention as follows: "In compliance with section 790 and California Rules of Court, rule 5.800, the prosecution filed a notice of Kenneth's eligibility for [DEJ] at the time of filing the section 602 petition. [Citation.] A hearing on the issue was set for November 8, 2006, but the juvenile court never held the required hearing. [Citation.] [¶] Because Kenneth was eligible for [DEJ], the juvenile court's failure to hold a hearing to determine whether to grant [DEJ] as required by [r]ule 5.800 requires reversal. (*In re Luis B.*[, *supra,*] 142 Cal.App.4th 1117, 1123–1124.)" The

---

[4] The court declined to make a finding on the allegation that Kenneth "did unlawfully possess a pistol, revolver, and firearm capable of being concealed upon the person" within the meaning of Penal Code section 12101, subdivision (a)(1).

[5] The notice states that Kenneth purports to appeal from the "Order of the Alameda County Juvenile Court after contested jurisdictional hearing on 11/22/06." However, it is the dispositional order of the San Francisco court that it is appealable. (*In re James J.* (1986) 187 Cal.App.3d 1339, 1341–1342 [232 Cal.Rptr. 456].) Pursuant to the rule of liberally construing a notice of appeal in favor of its sufficiency (Cal. Rules of Court, rule 8.100(a)(2)), we construe Kenneth's notice as perfecting a valid appeal from the dispositional order.

Attorney General responds that DEJ was never an option because Kenneth did not admit the allegations of the petition, but instead insisted on contesting them at a jurisdictional hearing. Kenneth replies by citing a single sentence in section 791.

Section 791 specifies that the "prosecuting attorney's written notification to the minor" shall include, among other things, "A clear statement that, in lieu of jurisdictional and dispositional hearings, the court may grant a deferred entry of judgment . . . *provided that the minor admits each allegation contained in the petition and waives time for pronouncement of judgment . . . .*" (§ 791, subd. (a)(3), italics added.) Section 791 also provides that "If the minor consents and waives his or her right to a speedy jurisdictional hearing, the court may refer the case to the probation department *or the court may summarily grant deferred entry of judgment if the minor admits the charges in the petition and waives time for the pronouncement of judgment. . . .*" (§ 791, subd. (b), italics added.) The Attorney General relies on the first part of the statute, Kenneth on the second.

■   If our inquiry could be confined to the part of a single sentence in section 791 that Kenneth cites, his argument might—and we emphasize, might—have a degree of plausibility. But our function is to look at the statutory scheme in its entirety, giving it a construction that will promote, rather than frustrate, its sensible operation. (E.g., *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744 [110 Cal.Rptr.2d 828, 28 P.3d 876]; *In re Michael G.* (1988) 44 Cal.3d 283, 296 [243 Cal.Rptr. 224, 747 P.2d 1152].) So viewed, Kenneth's argument fails.

■   Kenneth's approach erroneously assumes that a juvenile court can start the DEJ process in the teeth of the minor's opposition—in effect, that the DEJ procedure can be forced on an unwilling minor. That is clearly illogical, as there is nothing in the statutory language of section 791 or California Rules of Court, rule 5.800 which suggests that a minor can be compelled to accept DEJ. Or to put it conversely, the language in the statute and rule 5.800 requires some measure of consent.

It is perhaps true the DEJ statutes make no express provision for a minor in Kenneth's position, one who is advised of his DEJ eligibility, who does not admit the charges in the petition or waive a jurisdictional hearing, and who does not show the least interest in probation, but who insists on a jurisdic-

tional hearing in order to contest the charges. But the DEJ is clearly intended to provide an expedited mechanism for channeling certain first-time offenders away from the full panoply of a contested delinquency proceeding. That goal could not coexist with a minor who insists on exercising every procedural protection offered, and who then on appeal faults the juvenile court for not intervening and short circuiting those very protections. This would place a juvenile court in an impossible "Heads he wins, tails I lose" situation—not to mention apparently compelling a juvenile court to hold a hearing to consider DEJ for a minor who evinces no interest whatsoever in that option. We decline to adopt such a mischievous, if not self-defeating, construction.

■ *In re Luis B.*, *supra*, 142 Cal.App.4th 1117, the primary case on which Kenneth relies, does not compel a different result. The situation there was a failure of both the prosecuting attorney and the court to consider DEJ for a minor. Here, the prosecuting attorney satisfied the initial statutory obligation to consider DEJ. *In re Luis B.* is factually distinguished by Kenneth's actions that were tantamount to a rejection of DEJ.

## II

Kenneth was found to have committed offenses that if committed by an adult would amount to two felonies and one misdemeanor. Section 730.6 required the juvenile court to impose restitution fines of between $100 and $1,000.[6] At the dispositional hearing, the court ordered Kenneth to "pay a restitution fee and fine of a hundred and ten dollars." There followed a brief exchange between the court and the clerk:

"The Court: All right, we have more. We have three felonies, I believe. What do you have?

---

[6] The operative part is subdivision (b), which provides in pertinent part:

"(b) In every case where a minor is found to be a person described in Section 602, the court shall impose a separate and additional restitution fine. The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense as follows:

"(1) If the minor is found to be a person described in Section 602 by reason of the commission of one or more felony offenses, the restitution fine shall not be less than one hundred dollars ($100) and not more than one thousand dollars ($1,000). . . .

"(2) If the minor is found to be a person described in Section 602 by reason of the commission of one or more misdemeanor offenses, the restitution fine shall not exceed one hundred dollars ($100). . . ." (§ 730.6, subd. (b).)

"The Clerk: She is saying the fine was one ten. There is [*sic*] three felonies.

"The Court: That is 330, then. And thirty dollars for the DNA. . . . [¶] I will change that. There is a misdemeanor 341. . . ."

The minutes recite that Kenneth was ordered to "Pay restitution fine in the amount of $310.00 and administrative fees of $31.00." The order of probation, made at the same time and signed by the court, states that Kenneth is to "Pay State restitution fine of $310" and to "Pay fine of $31 to City and County of San Francisco."

According to Kenneth, "The only reasonable interpretation of the juvenile court's oral pronouncement is that the juvenile court imposed a $300 restitution fine . . . with a 10 percent administrative fee of $30 . . . for a total of $330." "[T]he record clearly shows the juvenile court intended to impose $331 in fines, rather than the $341 reflected in the minute order."

This is not "[t]he only reasonable interpretation." Granted, the court was apparently thinking out loud, and recalculating as it went along. The court (and the clerk) initially thought Kenneth had been found to have committed three felonies.[7] The court apparently decided to impose a fine of $110 per offense, so the total of "[t]hat is 330," together with $30 "for the DNA," for a total of $360. The court then apparently realized "[t]here is a misdemeanor," and reduced the final figure to "341." As $341 is the bottom-line figure that appears in both the minutes and the probation that the court itself signed, it appears to correlate to the court's imperfectly articulated reasoning.

■   Beyond the statutory minimums, section 730.6 leaves computation of the final figures to the court's discretion. At best, the record shows a basis for differing opinions of how the court calculated the $341. That is not sufficient to establish a reversible abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377 [14 Cal.Rptr.3d 880, 92 P.3d 369]; *In re Travis W.* (2003) 107 Cal.App.4th 368, 380 [132 Cal.Rptr.2d 135].)

---

[7] In fairness to the court, it should be remembered that it was the transferee San Francisco court that was holding the dispositional hearing, even though it was the transferor Alameda court that conducted the jurisdictional hearing and determined what offenses Kenneth had committed.

## Disposition

The dispositional order is affirmed.

Kline, P. J., and Lambden, J., concurred.

A petition for a rehearing was denied January 29, 2008, and appellant's petition for review by the Supreme Court was denied April 16, 2008, S160837. George, C. J., did not participate therein.