Filed 9/3/13  In re Christine C. CA4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re CHRISTINE C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHRISTINE C.,<br><br>Defendant and Appellant. | F065466<br><br>(Madera Super. Ct. No. MJL016948A)<br><br>**OPINION** |

---

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Madera County.  Thomas L. Bender, Judge.

Carey D. Gorden, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Before Poochigian, Acting P.J., Franson, J. and Peña, J.

## INTRODUCTION

A juvenile wardship petition (Welf. & Inst. Code,[1] § 602, subd. (a)) was filed in the Superior Court of Madera County alleging appellant Christine C., who was 17 years old, committed count I, felony assault with a deadly weapon, a knife, upon S.A., during an altercation at a party (Pen. Code, § 245, subd. (a)(1)). After a contested jurisdictional hearing, the court found the allegation true. Appellant was declared a ward of the court, ordered to serve time in custody, and placed on probation under various terms and conditions.

On appeal, appellant contends the prosecutor failed to comply with his statutory duties of notice and determination of her eligibility for the Deferred Entry of Judgment (DEJ) program. Appellant also contends that one of the terms of probation is unconstitutionally overbroad. We will modify the probation condition and otherwise affirm.

## FACTS

On the evening of January 16, 2012, about 25 to 30 young people responded to a Facebook post and attended a party for S.A. at Bass Lake. They sat around a campfire and drank beer and hard liquor. The guests included M.W. and his friend, appellant, who arrived together in M.W.'s truck. S.A., who was 20 years old, testified she knew M.W. from school, but she had never met appellant.

Around 10:30 p.m., S.A. saw one of her girlfriends walk out of the woods. The young woman's pants were down to the ankles, and she said that M.W. tried to rape her. Some of the young men attacked M.W. and beat him up. S.A. testified that one man pulled a knife, but he did not use it. S.A testified she tried to calm everyone down and

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

stop the fight.  S.A. told M.W. that he and appellant needed to leave.  M.W. and appellant got into the truck to leave, and everyone calmed down.

S.A. testified that a few minutes later, she realized M.W.'s truck had traveled about 25 feet from the campfire and stopped.  S.A. went to the truck, and found M.W. in the driver's seat and appellant in the front passenger seat.  S.A. asked M.W. why he was still there and yelled at him that he needed to leave.  M.W. did not respond.

S.A. testified that as she tried to talk to M.W., she heard some noises behind her, like someone was walking.  S.A. turned around and saw appellant.  Appellant did not say anything to her.  S.A. testified appellant suddenly stabbed her in the arm with a pocketknife.  S.A. testified they were face-to-face and "rolling around on the ground, and then I remember blood, there was blood everywhere."

After she was stabbed, S.A. tried to get back to her friends, but she tripped and fell to the ground.  S.A. hit her head and passed out.  When she woke up, the truck was still there, but M.W. and appellant were gone.  S.A.'s friends took her to the hospital and called the police.  After S.A. was stabbed, one of the party guests used a baseball bat to smash M.W.'s truck.

S.A. suffered eight different stab wounds to her left hip, left and right chest, and right arm.  She was in the hospital for two days.

S.A. testified she did not speak to, threaten, or strike appellant prior to being stabbed.  S.A. admitted she had consumed a large amount of hard liquor and smoked marijuana, and she was under the influence that night.[2]

**The investigation**

Around 11:45 p.m. on the night of the stabbing, Madera County Sheriff's Deputy Colleen Weisert contacted appellant at her residence.  Appellant spontaneously said she

---

[2] S.A. testified she had previously been on probation for petty theft.  She had been in fights before, the most recent occurring when she was 14 years old and beat up a girl who hit her brother.

was probably the person that Weisert was looking for because she had stabbed a girl. Appellant said she had gone to a party with M.W., and they had been chased. Appellant said someone hit her and she felt she had to defend herself. Appellant said she stabbed a girl with a pocketknife. Appellant had seen the girl before but she did not know her name.

Deputy Weisert advised appellant of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, and she agreed to answer questions. Appellant said someone accused M.W. of trying to rape a woman, and they were told to leave. When they tried to leave, they couldn't drive away because the truck had a flat tire. Appellant said a group of people "swarmed" the truck as they remained inside. Appellant took out her knife because she felt she needed to defend herself since there were "a couple of big guys" that were on her side of the truck. Appellant said she got out and tried to push the truck.

Appellant said S.A. punched the back of her head. Appellant dropped her knife and tried to pick it up. S.A. jumped on appellant and pushed her down. Appellant admitted she stabbed S.A. a couple of times, but she had to defend herself. Appellant suffered cuts and scratches, and she said the injuries happened when she stabbed S.A.

Deputy Weisert testified appellant said she had been drinking that night, but she did not appear intoxicated. Appellant was taken to the hospital and needed stitches for an injury on her hand.

M.W.'s truck was towed from the camping area. There was damage to the truck's body, the windows were smashed, and one of the tires had been slashed with a knife.

## M.W.'s testimony

At the contested jurisdiction hearing, M.W. testified for appellant and explained that everyone at the party was drinking, and S.A. appeared drunk. A girl claimed M.W. tried to rape her. M.W. testified he did not know the girl and he never touched her.[3]

M.W. testified he tried to leave, but appellant did not follow him to his truck. M.W. decided he could not leave without her. Some men pulled M.W. out of the truck and beat him up. One man pulled a buck knife, held it to M.W.'s throat, and then slashed one of the truck's tires.

M.W. testified that he did not see what happened to appellant, but he believed she stopped the men from beating him. The assailants backed away, and they let appellant and M.W. get into the truck. As M.W. drove away, some people threw bottles at the truck.

M.W. testified he did not get far because of the slashed tire, and his truck was stuck on the road. S.A. repeatedly walked up to the truck, cursed at them, and told them to leave. M.W. thought S.A. was acting crazy, aggressive, and angry, like she was on drugs.

M.W. was afraid he was going to be assaulted again and decided to walk away to get help. Appellant stayed with the truck but M.W. did not know why. M.W. did not know what happened between appellant and S.A. after he left the area.

## Appellant's testimony

Appellant testified she had walked away from the campfire to use her cell phone and suddenly realized M.W. was leaving. She ran to the truck and discovered the other guests were trying to beat up M.W. A girl said that she thought someone had been raped. Appellant heard them curse and make racial slurs. One man pulled a knife and held it to

---

[3] The appellate record is silent as to whether M.W. was investigated or charged with any sexual offenses based on the girl's allegations.

M.W.'s neck. Appellant pulled her own knife, banged it on top of the truck to make noise, and yelled at them to get away. The others finally stepped away from the truck, appellant got in, and M.W. tried to drive away.

Appellant testified the truck got stuck on the road. Appellant and M.W. tried to call for help but they could not reach anyone. S.A. walked to the truck and talked to M.W. a couple of times, and then started to yell that he needed to leave. S.A. was drunk, angry, and staggering.

Appellant testified she finally reached someone on her cell phone to get help. S.A. again walked up to the truck and yelled at M.W. Appellant felt something hit the back of her head. Appellant was startled and dropped her cell phone and knife. Appellant was not sure if S.A. hit or pushed her, but both of them ended up on the ground. S.A. was on top of appellant and hit her in the eye.

Appellant testified she blacked out "and all I remember is … stabbing her three times, and it was black after that again." Appellant got up, grabbed her knife and cell phone, and ran away.

**The court's ruling**

The juvenile petition alleged appellant committed the felony offense of assault with a deadly weapon, a knife, upon S.A. After the contested hearing, the court found the felony allegation true. The court found appellant had the right to defend herself but she exceeded that right by using a deadly weapon.

## DISCUSSION

### I.  Appellant's eligibility for DEJ

Appellant contends the prosecutor failed to comply with his statutory requirement to determine whether she was eligible for deferred entry of judgment (DEJ) and to advise her of her eligibility. Appellant asserts that while the prosecutor filed and served her with the requisite form to determine her eligibility, that form contained conflicting statements as to whether she was eligible. Appellant further contends that she did not waive her

6.

right to enter the DEJ program, even though she contested the allegations of the juvenile petition, since the prosecutor failed to provide her with the appropriate notice of her eligibility. The People respond that the prosecutor complied with his statutory duty and determined she was ineligible for DEJ.

We will begin with a brief review of the DEJ statutory scheme and then review the procedural history of this case.

## A. Eligibility for DEJ

The determination of whether to grant DEJ requires consideration of "two distinct essential elements of the [DEJ] program," which are "*eligibility*" and "*suitability.*" (*In re Sergio R.* (2003) 106 Cal.App.4th 597, 607, fn. 10, italics in original.) The eligibility requirements for DEJ are set forth in section 790, which provides that a minor is eligible for DEJ if he or she is accused in a juvenile wardship proceeding of committing a felony offense and all of the following circumstances apply: "(1) The minor has not previously been declared to be a ward of the court for the commission of a felony offense. [¶] (2) The offense charged is not one of the offenses enumerated in subdivision (b) of Section 707. [¶] (3) The minor has not previously been committed to the custody of the Youth Authority. [¶] (4) The minor's record does not indicate that probation has ever been revoked without being completed. [¶] (5) The minor is at least 14 years of age at the time of the hearing. [¶] (6) The minor is eligible for probation pursuant to Section 1203.06 of the Penal Code."[4] (§ 790, subd. (a)(1)-(6).)

Thus, to be eligible for the DEJ program, the juvenile cannot be alleged to have committed an offense described by section 707, subdivision (b). (§ 790, subd. (b)(2).) Section 707, subdivision (b) lists a series of serious offenses, including but not limited to

---

[4] Section 790, subdivision (a)(3) refers to the California Youth Authority (CYA), which was renamed the California Department of Corrections and Rehabilitation, Juvenile Justice, effective July 1, 2005. The Division of Juvenile Facilities (DJF) is part of the Division of Juvenile Justice. (*In re M.B.* (2009) 174 Cal.App.4th 1472, 1475.)

murder ((b)(1)), attempted murder ((b)(9)), voluntary manslaughter ((b)(30)), robbery ((b)(3)), several sexual offenses ((b)(4)-(b)(8)), assault with a firearm or destructive device ((b)(13)), and "assault by any means of force likely to produce great bodily injury" ((b)(14)).

The prosecuting attorney has the duty to assess a minor's eligibility for DEJ: "The prosecuting attorney *shall* review his or her file to determine whether [the eligibility requirements set forth above] apply.…" (§ 790, subd. (b), italics added.) California Rules of Court[5], rule 5.800(b) reiterates the prosecuting attorney's duty that "[b]efore filing a petition alleging a felony offense, or as soon as possible after filing, the prosecuting attorney *must* review" the minor's file to determine his or her eligibility under section 790, subdivision (a). (Italics added.)

If the minor is found eligible for DEJ, the prosecuting attorney "*shall* file a declaration in writing with the court or state for the record the grounds upon which the determination is based, and shall make this information available to the minor and his or her attorney." (§ 790, subd. (b), italics added.) Upon finding the minor eligible, the prosecuting attorney "*must* file" a form entitled "Determination of Eligibility-Deferred Entry of Judgment-Juvenile (form JV-750)," at the time that the section 602 wardship petition is filed. (Rule 5.800(b), italics added.)

If the prosecutor determines the minor is eligible for DEJ, the prosecutor must serve "written notification to the minor" of his or her eligibility. This notification is provided in Form JV-751, entitled "Citation and Written Notification for Deferred Entry of Judgment – Juvenile." (See, e.g., *In re C.W.* (2012) 208 Cal.App.4th 654, 659-661 (*C.W.*); §§ 790, 791) This notice "*shall* also include" (§ 791, subd. (a), italics added) notice of the hearing, " '[a] full description of the procedures for deferred entry of judgment' [citation] and '[a] clear statement that, in lieu of jurisdictional and disposition

---

[5] All further references to rules are to the California Rules of Court.

8.

hearings, the court may grant a deferred entry of judgment with respect to any offense charged in the petition, provided that the minor admits each allegation contained in the petition and waives time for the pronouncement of judgment' [citation]." (*C.W., supra,* 208 Cal.App.4th at p. 660; § 791, subds. (a)(1)-(3).)

By comparison, "[i]f it is determined that the child is *ineligible* for deferred entry of judgment, the prosecuting attorney must complete and provide to the court, the child, and the child's attorney" the form JV-750, so stating. (Rule 5.800(e), italics added.)

Once the minor's eligibility is established, the juvenile court has the discretion to determine if the minor is suitable for DEJ after consideration of certain statutory factors. (*In re Usef S.* (2008) 160 Cal.App.4th 276, 283-284 (*Usef S.*); *In re Luis B.* (2006) 142 Cal.App.4th 1117, 1123 (*Luis B.*).) The court's ultimate denial of DEJ is proper "only when the trial court finds the minor would not benefit from education, treatment and rehabilitation." (*Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, 561.)

However, the juvenile court is not required to conduct a suitability hearing if the prosecutor determines the minor is eligible for DEJ, and the minor receives the requisite notice of his or her eligibility, but he or she nevertheless denies the allegations of the petition and requests a contested hearing. (*In re Kenneth J.* (2008) 158 Cal.App.4th 973, 976-980 (*Kenneth J.*); *Usef S., supra*, 160 Cal.App.4th at pp. 281-283.) In such circumstances, the minor's denial of the allegations and insistence on a contested hearing are "tantamount to a rejection of DEJ." (*Kenneth J., supra*, 158 Cal.App.4th at p. 980; *Usef S., supra*, 160 Cal.App.4th at p. 286, fn. 3.)

With this background in mind, we turn to the procedural history of this case.

**B.     Procedural history**

On January 18, 2012, a juvenile petition was filed which alleged appellant committed the felony offense of assault with a deadly weapon, a knife, upon S.A. On the same day, the prosecution filed with the court Form JV-750, "Determination of Eligibility" for Deferred Entry of Judgment (DEJ), which consists of preprinted

9.

statements with checkboxes. The first section states that the prosecution had reviewed appellant's records, and the following boxes were checked: appellant was 14 years or older; she was alleged to have committed at least one felony offense; she had not previously been declared a ward based on the commission of a felony; she had never been committed to the California Department of Corrections and Rehabiliation (CDCR), Division of Juvenile Justice (DJJ); she was currently on formal probation; and she was eligible for probation pursuant to Penal Code section 1203.06.

In that same section, the following preprinted box *was not checked*:

"There is *no allegation* that the youth committed an offense described in Welfare and Institutions Code section 707(b)." (Italics added.)**6**

In the next section of the form, the box was checked which stated: "The youth is ineligible."

At the bottom of Form JV-750, however, the final box was checked which stated: "Citation and Written Notification for Deferred Entry of Judgment – Juvenile (form JV-751) is attached."

The record contains a proof of service which states the juvenile wardship petition and Form JV-750, "Determination of Eligibility – Deferred Entry of Judgment – Juvenile," were served on appellant, her mother, and her appointed counsel, on or about January 18, 2012.

While the final box in form JV-750 was checked, which stated that Form JV-751, "Citation and Written Notification" for DEJ, was attached, the instant appellate record does not contain this form or any evidence of its existence.

---

**6** As we will discuss, *post*, the awkward language of this statement indicates that if the box *is* checked, then the juvenile is *not alleged* to have committed an offense described in section 707, subdivision (b); if the box *is not* checked, then the juvenile is alleged to have committed such an offense and is therefore ineligible for the DEJ program.

On January 19, 2012, appellant appeared in court with her mother and her attorney, and she denied the petition's allegation. On April 12, 2012, appellant requested a contested jurisdiction hearing. Thereafter, during numerous continuances, none of the parties addressed appellant's eligibility for DEJ.

On June 7 and 8, 2012, the court conducted the contested jurisdiction hearing and found the felony allegation true.

On July 24, 2012, the court denied appellant's motion to reduce the count to a misdemeanor. The court declared appellant a ward of the juvenile court, ordered her to serve 60 days in custody, and imposed several terms and conditions for probation. Appellant and her attorney did not refer to DEJ during the disposition hearing.

### C.    Form JV-750

In the instant case, the prosecutor complied with his duty to file Form JV-750 and determine whether appellant was eligible. Appellant asserts, however, the form contains potentially conflicting statements as to whether the prosecutor determined appellant was or was not eligible for DEJ.

In that form, the prosecutor checked all but one box as to whether appellant was eligible. He did not check the box indicating there was no allegation that appellant was alleged to have committed an offense which was described in section 707, subdivision (b). The prosecutor's failure to check this box reflects the prosecutor's determination the offense alleged in the instant petition – felony assault with a deadly weapon, a knife – was an offense described in section 707, subdivision (b), thus rendering appellant ineligible for DEJ. This conclusion is further supported by the prosecutor's check of the box which flatly stated: "The youth is ineligible."

Appellant contends the same form contains the contradictory declaration, based on the prosecutor's check of the final box which stated that Form JV-751, the citation and written notification for DEJ, was attached. As explained, *ante*, a juvenile must be served

with the written notification about DEJ contained in Form JV-751 *only* if the prosecutor determines the juvenile is eligible for DEJ. (§ 791.)

Thus, the prosecutor filed Form JV-750 but it contained two declarations: appellant was *ineligible* for DEJ because the petition alleged she committed an offense described in section 707, subdivision (b); but the prosecutor also declared he attached Form JV-751, the written notification of DEJ which is only served if the juvenile is eligible for DEJ, thus indicating he determined appellant *was eligible* for DEJ.

### D.     The petition's allegation

The underlying question in this case is whether appellant was eligible for DEJ. Appellant asserts she was eligible because the petition alleged she committed an assault with a deadly weapon which is not an offense specifically enumerated in section 707, subdivision (b), the prosecutor made conflicting declarations in Form JV-750, and he declared but failed to actually serve appellant with Form JV-751.

Appellant further asserts that *Kenneth J.*, *supra*, 158 Cal.App.4th 973 and *Usef S.*, *supra*, 160 Cal.App.4th 276 do not prevent her from raising her eligibility for DEJ, even though she denied the allegations and requested a contested hearing, because she never received appropriate notice of her eligibility given the conflicting statements in Form JV-750.[7]

The People reply that appellant was ineligible for DEJ but have not offered any facts, statutory citations, or arguments in support of this bare assertion.

As explained, *ante*, a juvenile is ineligible for DEJ if the wardship petition alleges the juvenile committed an offense enumerated in section 707, subdivision (b). One of the enumerated offenses is "assault by any means of force likely to produce great bodily

---

[7] Appellant raises an ineffective assistance argument to avoid any claims that she has waived appellate review of this issue. She has not waived appellate review of this issue, and we need not address her ineffective assistance claim.

injury." (§ 707, subd. (b)(14)).  Appellant correctly states that she was charged with "assault with a deadly weapon," a knife, an offense which is not specifically enumerated in section 707, subdivision (b).

However, both appellant and the People have failed to acknowledge the settled authority that "assault by any means of force likely to produce great bodily injury," as described in section 707, subdivision (b)(14), also encompasses "assault with a deadly weapon," as charged in the petition in this case.  (*In re Pedro C.* (1989) 215 Cal.App.3d 174, 182 (*Pedro C.*); *In re Sim J.* (1995) 38 Cal.App.4th 94, 97-98 (*Sim J.*).)

In *Pedro C.*, the minor was alleged to have committed " 'an assault with a deadly weapon or instrument, to wit:  motor vehicle upon … a peace officer ....' " (*Pedro C., supra*, 215 Cal.App.3d at p. 182.)  He admitted a violation of former Penal Code section 245, subdivision (b), which stated:  " 'Every person who commits an assault with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury upon the person of a peace officer or fireman engaged in the performance of his or her duties ....' " (*Ibid*.)  The juvenile court initially concluded that since the minor was not charged with assault by means likely to produce great bodily injury, he was not alleged to have committed the offense specifically enumerated in section 707, subdivision (b)(14).  The court then reconsidered the matter and reached the opposition conclusion.  (*Pedro C., supra,* at p. 182.)

*Pedro C.* held section 707, subdivision (b)(14) included the offense of assault with a deadly weapon, even though it was not specifically enumerated.  *Pedro C.* explained that section 707, subdivision (b) was enacted to address a list of serious felonies, including murder.  "Minors who have committed these offenses must be evaluated to determine if they are fit subjects to be dealt with under the Juvenile Court Law [citation].  If they are, and are subsequently committed to [custody], its jurisdiction over them extends … until their 25th birthday." (*Pedro C., supra*, 215 Cal.App.3d at p. 182.)

13.

"Given this statutory scheme, for this court to determine that assault with a deadly weapon is not a section 707, subdivision (b) offense would be to elevate form over substance. [Citation.] ' "A deadly weapon is one likely to produce death or great bodily injury." ' [Citations.] Necessarily, then, assault with a deadly weapon includes assault by means likely to produce great bodily injury." (*Pedro C., supra*, 185 Cal.App.3d at p. 182; accord, *Sim J., supra*, 38 Cal.App.4th at pp. 97-98.)

### E.    Analysis

In this case, the juvenile petition alleged appellant committed an assault with a deadly weapon. In Form JV-750, the prosecutor *did not* check the box which stated:

"There is *no allegation* that the youth committed an offense described in Welfare and Institutions Code section 707(b)." (Italics added.)

The prosecutor's failure to check this box indicated his determination that appellant *was alleged* to have committed an offense described in section 707, subdivision (b). The prosecutor's determination was consistent with *Pedro C*.'s holding that assault with a deadly weapon was an offense contained within section 707, subdivision (b)(14)'s description of "assault by any means of force likely to produce great bodily injury." *(Pedro C., supra*, 215 Cal.App.3d at p. 182.) This determination was also consistent with the prosecutor's ultimate indication in Form JV-750 that appellant was "ineligible" for DEJ.

The prosecutor thus complied with his statutory duty to determine appellant's eligibility for DEJ, filed Form JV-750, and stated appellant was ineligible because she was alleged to have committed an offense described in section 707, subdivision (b). Once the prosecutor determined appellant was ineligible for DEJ, he was not required to file and serve appellant with Form JV-751, with written notification of the terms of the DEJ program.

However, the prosecutor checked the final box on Form JV-750, which stated: "Citation and Written Notification for Deferred Entry of Judgment – Juvenile (form JV-751) is attached." As the parties agree, there is no evidence Form JV-751 form was

14.

completed, attached to Form JV-750, filed, or served on appellant. Appellant asserts the prosecutor's check of the final box on Form JV-750, and his failure to file Form JV-751, indicates she was eligible for DEJ but she did not receive the appropriate notice about her eligibility, and the matter must be remanded consistent with *C.W., supra*, 208 Cal.App.4th 654 and *Luis B., supra*, 142 Cal.App.4th 1117.

*C.W.* and *Luis B.* do not support appellant's arguments in this case. In *C.W.,* the prosecutor determined the minor was eligible for DEJ and filed Form JV-750, but failed to complete or serve Form JV-751, or give the statutorily required notice of his eligibility. The minor denied the allegations and requested a contested hearing. On appeal, he complained about the prosecutor's failure to give the requisite notice of his eligibility for DEJ, and the court's failure to determine his suitability. *C.W.* agreed and remanded the matter for further appropriate proceedings given the prosecutor's failure to comply with notice in a case where the minor was eligible for DEJ. (*C.W., supra*, 208 Cal.App.4th at pp. 660-662.) In *Luis B*., the prosecutor completely failed to determine in the first instance whether the minor was eligible for DEJ, never completed Form JV-750, and never provided any type of notice to the minor. *Luis B*. also remanded the matter given the prosecutor's failure to determine the minor's eligibility and comply with the notice requirements. (*Luis B., supra*, 142 Cal.App.4th at pp. 1121-1123.)

Neither *C.W.* nor *Luis B*. support appellant's arguments. Neither case involved a minor who was determined to be ineligible for DEJ based on the alleged commission of an offense within section 707, subdivision (b). Instead, the cases dealt with a prosecutor who either found the minor eligible and failed to comply with the notice requirements (*C.W.*), or completely failed to determine the minor's eligibility in the absence of any argument that the minor was ineligible (*Luis B*.).

Given the entirety of the record in this case, we conclude the prosecutor correctly determined appellant was alleged to have committed an offense within section 707, subdivision (b), she was ineligible for DEJ on that basis (§ 790, subd. (a)(2)), and the

prosecutor was not required to file Form JV-751. The prosecutor's erroneous mark of the check box about Form JV-751 necessarily constitutes clerical error which does not require remand.

## II. **The probation condition**

Appellant next contends the court improperly imposed the following condition of probation because it is overbroad and unconstitutional.

> "Not to possess, own, or handle any firearm, knife, weapon, fireworks, explosives, or chemicals that can produce explosives."

The People agreed the condition is overbroad and should be modified to prohibit appellant from possessing or using weapons that are dangerous or deadly as a matter of law or from possessing other instrumentalities that are capable of being used in a dangerous or deadly manner with the intent to so use them. (See, e.g., *In re R. P.* (2009) 176 Cal.App.4th 562, 568.) In her reply brief, appellant has not challenged the People's suggested modification.

## DISPOSITION

The probation condition which stated that appellant could not "possess, own, or handle any firearm, knife, weapon, fireworks, explosives, or chemicals that can produce explosives," is modified to instead state:

> "Appellant is prohibited from possessing or using weapons that are dangerous or deadly as a matter of law or from possessing other instrumentalities that are capable or being used in a dangerous or deadly manner with the intent to so use them."

In all other respects, the judgment is affirmed.

16.