Filed 3/27/14  In re N.H. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re N.H., a Person Coming Under the Juvenile Court Law. | H039258 (Santa Clara County Super. Ct. No. JV38234) |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> N.H., <br><br> Defendant and Appellant. | |

**INTRODUCTION**

The juvenile court found true the allegations that appellant N.H. had committed vehicular manslaughter (Pen. Code, § 191.5, subd. (b); count 1), driving under the influence of alcohol and/or drugs and causing injury (Veh. Code, § 23153, subd. (a); count 2), driving under the influence of alcohol with a blood alcohol level of 0.08 percent and causing injury (Veh. Code, § 23153, subd. (b); count 3), and carrying alcohol in a vehicle by a driver under 21 (Veh. Code, § 23224, subd. (a); count 4).  The court also found true all enhancements attached to counts 1 through 3.  On appeal, N.H. contends that the juvenile court erred by (1) failing to conduct a hearing to determine her

suitability for the deferred entry of judgment (DEJ) program, (2) failing to expressly declare whether counts 1 through 3 were felonies or misdemeanors, as required by Welfare and Institutions Code section 702[1], (3) failing to strike counts 2 and 3 and the attached enhancements, and (4) miscalculating the maximum time of confinement (MTC).

For the reasons stated below, we will reverse and remand the dispositional order.

## BACKGROUND

Around 9:00 p.m. on November 20, 2010, N.H., then a 17-year old, drove her best friend, J.W., and three minor boys, C.D., N.V., and A.D., to a party. On the way to the party, N.H. stopped by a liquor store, where C.D. stole a bottle of brandy. At the party, N.H. and her four friends each drank from the bottle of brandy. There were also several other open containers of alcohol for anyone to consume. N.H. and her friends stayed for 45 minutes, and then decided to leave to go to another party.

Before leaving, C.D. believed that "no one was good to drive." Nevertheless, C.D. offered to drive because he thought that N.H. should not drive. N.H. responded, "It's fine, I can drive." N.H. got in the driver's seat; N.V. sat in the front passenger seat; and C.D., A.D., and J.W. sat in the backseat. J.W. sat in between C.D. and A.D. While driving, N.H. looked at her phone-based GPS to navigate her way to the next party. The roads were wet from rainfall earlier that day.

Around midnight, N.H. took the Bernal Road onramp onto the 101 freeway. When she tried to merge onto the right lane of the freeway, she "cut off" Jeffrey Sims. N.H. was driving slower than Sims at the time. The right front wheel of Sim's car hit N.H.'s car's left rear wheel. Sims veered to the left and N.H. veered to the right. Sims's car bounced off the median and spun across the highway. His car stopped in the right

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

lane, facing the opposite direction of traffic. Sims exited his car, called 911, and walked towards N.H.'s car.

N.H.'s car spun out and broadsided a tree along the highway. N.H., C.D., and A.D., were injured. N.V. did not appear injured and exited the vehicle after the accident. J.W. died in the accident.

At the scene of the accident, officers found a marijuana box, a baggy of marijuana, marijuana in a plastic vial, an empty bottle of brandy, and a bottle of vodka, which was inside a backpack in N.H.'s car. Officer Gary Gray, who responded to the accident, contacted the three boys and observed that they appeared to have been drinking. He also noticed that they smelled of alcohol.

N.H. and two of the boys were transported to a hospital. Officer Gray spoke to N.H. at the hospital. N.H. admitted to the officer that she had been drinking earlier that evening. She told the officer that she had three shots of brandy prior to driving. She said she took her first shot around 8:30 p.m. and her last shot around 9:00 p.m. The officer observed that alcohol odors were emanating from N.H.'s breath and body and that her eyes were red and watery.

Officer Gray administered field sobriety tests, including two preliminary alcohol screening (PAS) tests at 2:23 a.m. and 2:26 a.m. N.H. blew a 0.037 percent and 0.034 percent on the PAS device. The officer also administered a blood test at 2:45 a.m. The test indicated that she had a blood alcohol level (BAL) of 0.043 percent. Estimating from N.H.'s height, 4 feet and 11 inches, and weight, 125 pounds, a criminalist concluded that N.H. had a BAL of approximately 0.09 percent at the time of the accident.

Based on Officer Gray's questioning and the field sobriety tests, he concluded that N.H. was impaired at the time of the accident. The officer also concluded, based on the statements of the individuals involved in the accident and the evidence at the scene, that N.H. made an unsafe lane change.

3

On April 28, 2011, the district attorney filed a juvenile wardship petition and a form and written notice of N.H.'s eligibility for DEJ. On August 29, 2012, the district attorney filed a second amended juvenile wardship petition. The petition alleged that N.H. committed vehicular manslaughter (Pen. Code, § 191.5, subd. (b); count 1), driving under the influence of alcohol and/or drugs and causing injury (Veh. Code, § 23153, subd. (a); count 2), driving under the influence of alcohol with a blood alcohol level of 0.08 percent and causing injury (Veh. Code, § 23153, subd. (b); count 3), and carrying alcohol in a vehicle by a driver under the age of 21 (Veh. Code, § 23224, subd. (a); count 4). As to count 1, the petition further alleged that N.H. personally inflicted great bodily injury upon C.D. and A.D. (Pen. Code, § 12022.7, subd. (a)) and that she personally inflicted bodily injury upon N.V. (Veh. Code, § 23558). As to counts 2 and 3, the petition further alleged that N.H. inflicted great bodily injury upon J.W., C.D., and A.D. (Pen. Code, § 12022.7, subd. (a)).

The juvenile court held a five-day contested jurisdictional hearing. The prosecution's theory was that N.H. was under the influence of alcohol and caused the accident when she made an unsafe lane change. The defense's theory at the hearing was that Sim's driving contributed to the accident and that N.H.'s impairment did not affect her driving or cause the accident.

Following the jurisdictional hearing, the juvenile court found true all of the allegations and enhancements. At the contested dispositional hearing, the juvenile court declared N.H. a ward of the court. The court placed N.H. on probation and adopted the probation officer's recommendations, with some modifications. One of the conditions mandated that N.H. serve sixth months in juvenile hall. The court also suspended N.H.'s license for one year. The court set the MTC at 23 years 4 months.

## DISCUSSION

N.H. raises several contentions on appeal. First, N.H. argues that the juvenile court erred by failing to hold a DEJ suitability hearing. Second, she contends that the

juvenile court failed to expressly declare whether counts 1 through 3 were misdemeanors or felonies. Third, she contends that counts 2 and 3 and the attached enhancements must be stricken as they are lesser included offenses of count 1. Lastly, she contends that the MTC was miscalculated.

### I. DEJ Suitability Hearing

### 1. Proceedings Below

On April 28, 2011, the district attorney filed a form determining that N.H. was eligible for DEJ. The district attorney also provided N.H. with a written notification of her eligibility for DEJ, which included an advisement that if the parties and the juvenile court agree that DEJ should be granted, "in lieu of normal court proceedings the youth will be required to . . . admit that the youth committed the offense or offenses alleged to have been committed. The District Attorney may require an admission to all offenses charged."

At arraignment on May 18, 2011, N.H. waived time for the jurisdictional hearing. The probation department submitted a DEJ suitability report, in which it recommended that N.H. should be found unsuitable for DEJ. Specifically, the report noted that "[e]ven though [N.H.] appears remorseful, she needs to be held accountable for her deadly decision to drink and drive. The Officer thought [N.H.] would have at least learned a lesson . . . however, there have been pictures posted on facebook a few month later showing [N.H.] with her friends partying and being in the presence of alcohol. This Officer does not believe [N.H.] understands the seriousness of her actions and how much she has affected the lives of the victim's family. . . . [¶] This Officer believes Wardship must be established in order to hold her accountable in a meaningful manner to provide close supervision of her behavior. Given the gravity of the offense, Wardship will provide for a tangible consequence if she fails. Given the totality and circumstance of the offense, this Officer finds the minor unsuitable for DEJ as her Probation requirements are beyond the scope of the DEJ program.

5

In January 2012, N.H. submitted a brief in favor of DEJ, disputing the probation report's recommendation. The prosecution filed opposition to N.H.'s motion for DEJ. In February 2012, the juvenile court held a pretrial hearing, where it discussed whether N.H. was suitable for a DEJ determination. The court stated that before it could make a determination of whether N.H. was suitable for DEJ, "the minor needs to demonstrate that she is in no uncertain terms admitting the allegations of the petition to be not only eligible, but suitable for [DEJ]." The court expressed that it had "certain reservations and hesitations about [N.H.'s] suitability for [DEJ] . . . ; but it's really a question of procedure." The court stated that "the pre-requisite to [a suitability determination] is you admit the allegations of the petition. And I understand that there are reasons for you not wanting to do those that have more to do with legal questions than factual questions. I understand that. But in the Court's opinion, I have no duty to inquire and hold a hearing as to suitability until those pre-requisite conditions are met. . . . [¶] The People have through their appropriate notification to you notified you that you are eligible for [DEJ]. And in that notice there should be a clear statement that to be eligible you must admit the allegations in the petition for me to be able to reach the decision as to whether or not you're suitable. So it appears, unless something has changed, that we are not in a position now or the Court is not in a position and the case is not in a posture where I can make that determination at this time."

Defense counsel asked whether the juvenile court was not willing to go forward with the suitability hearing without N.H.'s admission to the petition. The court responded, "That's correct. [¶] You know, as I said, I reviewed 790 and 791 as well as some of the case law that interprets the statutory scheme for [DEJ], and it's clear to me that my discretion [and] my duty to conduct a hearing as to the suitability of this minor gives me the discretion to do that, but also to require that there be an admission to the petition." The court, however, granted defense counsel a continuance for further research and briefing of the DEJ issue.

Subsequently, N.H. submitted additional briefing, in which she argued that an admission to the petition was not required before the juvenile court could determine her suitability for DEJ. The court held a hearing in March 2012, where it determined that it would not conduct a suitability hearing unless N.H. admitted to the petition. The court explained that "the statutory scheme is clear that an admission is required before the Court undertakes a suitability hearing. . . . And even if that were a question of the Court's discretion, I would still would [*sic*] not reach a different decision because the admission in this case might be very instructive and very important to the Court in making its determination as to just how sincere the minor is in expressing any regret, her motivations for wanting to undertake a sincere effort in rehabilitation; and those are . . . some of the key issues [and] components that the Court must weigh in its decision."

### 2. Analysis

Under the DEJ provisions of section 790 et seq., " 'in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment.' " (*In re Kenneth J.* (2008) 158 Cal.App.4th 973, 976 (*Kenneth J.*).) " 'If the minor waives the right to a speedy jurisdictional hearing, admits the charges in the petition and waives time for pronouncement of judgment, the court may summarily grant DEJ or refer the matter to the probation department for further investigation.' " (*Id.* at p. 977.)

The determination of whether to grant DEJ requires consideration of "two distinct essential elements of the [DEJ] program": "*eligibility* " and "*suitability.*" (*In re Sergio R.* (2003) 106 Cal.App.4th 597, 607, fn. 10.) Once the threshold determination of eligibility is made, "The trial court . . . has the ultimate discretion to rule on the suitability of the minor for DEJ . . . ." (*In re Luis B.* (2006) 142 Cal.App.4th 1117, 1123 (*Luis B.*).)

"The prosecuting attorney shall review his or her file to determine whether [the eligibility requirements set forth in § 790, subd. (a)(1)-(6)] apply." (§ 790, subd. (b).) California Rules of Court, rule 5.800(b) reiterates the prosecuting attorney's duty, that

7

"[b]efore filing a petition alleging a felony offense, or as soon as possible after filing, the prosecuting attorney must review" the minor's file to determine his or her eligibility under section 790, subdivision (a).

If the minor is found eligible for DEJ, the prosecuting attorney "shall file a declaration in writing with the court or state for the record the grounds upon which the determination is based, and shall make this information available to the minor and his or her attorney." (§ 790, subd. (b).) Upon finding the minor eligible, the prosecuting attorney "must file" a form entitled "*Determination of Eligibility-Deferred Entry of Judgment-Juvenile* (form JV-750)," at the time that the wardship petition is filed. (Cal. Rules of Court, rule 5.800(b).) In addition, the prosecutor's "written notification to the minor" of the DEJ eligibility "shall also include" a "full description of the procedures for [DEJ]," a general explanation of the roles and authorities of the various government entities involved, and "[a] clear statement that, in lieu of jurisdictional and disposition hearings, the court may grant [DEJ] with respect to any offense charged in the petition, *provided that the minor admits each allegation contained in the petition and waives time for the pronouncement of judgment . . . .*" (§ 791, subd. (a), italics added.)

Once the minor's eligibility is established, the juvenile court has the discretion to determine if the minor is suitable for DEJ after consideration of certain statutory factors. (*In re Usef S.* (2008) 160 Cal.App.4th 276, 283-284 (*Usef S.*); *Luis B.*, *supra*, 142 Cal.App.4th at p. 1123.) "Otherwise stated, once eligibility is established, 'the statutory language empowers but does not compel the juvenile court to grant [DEJ].' [Citations.]" (*Usef S., supra,* 160 Cal.App.4th at p. 284.)

In *Kenneth J.,* the appellate court considered circumstances similar to those present here. In that case, the minor had been informed of his DEJ eligibility, but insisted on contesting the charges through a jurisdictional hearing. (*Kenneth J., supra,* 158 Cal.App.4th at pp. 977-978.) The appellate court rejected the minor's argument that the trial court was nonetheless required to hold a DEJ suitability hearing. The appellate court

8

noted that "It is perhaps true the DEJ statutes make no express provision for a minor in Kenneth's position, one who is advised of his DEJ eligibility, who does not admit the charges in the petition or waive a jurisdictional hearing, and who does not show the least interest in probation, but who insists on a jurisdictional hearing in order to contest the charges. But the DEJ is clearly intended to provide an expedited mechanism for channeling certain first-time offenders away from the full panoply of a contested delinquency proceeding. That goal could not coexist with a minor who insists on exercising every procedural protection offered, and who then on appeal faults the juvenile court for not intervening and short circuiting those very protections. This would place a juvenile court in an impossible 'Heads he wins, tails I lose' situation—not to mention apparently compelling a juvenile court to hold a hearing to consider DEJ for a minor who evinces no interest whatsoever in that option. We decline to adopt such a mischievous, if not self-defeating, construction." (*Id.* at pp. 979-980.)

Similarly, in *Usef S.*, the appellate court held that the juvenile court was not required to determine a minor's DEJ suitability when the minor declined to admit the allegations against him. There, the minor argued that the juvenile court was required by the DEJ statutes to exercise its discretion to determine his DEJ suitability. (*Usef S.*, *supra*, 160 Cal.App.4th at p. 282.) However, the appellate court held that "the juvenile court committed no error in failing to hold a hearing to determine the appellant's suitability for DEJ once it became clear appellant was not admitting the allegations against him, but rather was insisting on contesting them at a jurisdictional hearing." (*Id.* at p. 286, fn. omitted.)

Here, N.H. was found eligible for DEJ and pursuant to sections 790 and 791, the prosecutor filed a form and written notice of N.H.'s eligibility for DEJ. The written notice advised N.H. that if the parties and the court agreed that DEJ should be granted, "in lieu of normal court proceedings" she would be required to "admit that [she] committed the offense or offenses alleged to have been committed" in the petition in

9

order to be granted DEJ. However, N.H. did not admit to the allegations in the petition, and she proceeded with a contested jurisdictional hearing.

N.H. argues that *Kenneth J.* and *Usef S.* are distinguishable from the present case because, unlike the minors in those cases, she requested a DEJ suitability determination and sought DEJ. We are not convinced by this distinction. Indeed, allowing N.H. to have both a suitability hearing without admitting to the petition and a contested jurisdictional hearing would contradict the intent of the DEJ program to provide "an expedited mechanism for channeling certain first-time offenders away from the full panoply of a contested delinquency proceeding." (*Kenneth J.*, *supra*, 158 Cal.App.4th at p. 980.) Under the circumstances, N.H.'s failure to admit to the petition and her choice to proceed with a contested jurisdictional hearing was tantamount to a rejection of DEJ. The juvenile court was thus not obligated to hold a DEJ suitability hearing. (See *id.* at p. 980; *Usef S.*, *supra*, 160 Cal.App.4th at p. 286.)

### II.Express Declaration of N.H.'s Offenses as Felonies or Misdemeanors

Next, N.H. claims that remand is necessary under section 702 for the trial court to make an express declaration about whether her counts of vehicular manslaughter, driving under the influence of alcohol and/or drugs and causing injury, and driving under the influence of alcohol with a blood-alcohol level of 0.08 percent and causing injury are felonies or misdemeanors.

Section 702 provides, in pertinent part: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." The statute "is unambiguous. It requires an explicit declaration by the juvenile court whether an offense would be a felony or misdemeanor in the case of an adult." (*In re Manzy W.* (1997) 14 Cal.4th 1199, 1204 (*Manzy W.*).) The statute "serves the purpose of ensuring that the juvenile court is aware of, and actually exercises, its discretion under Welfare and Institutions Code section 702. For this reason, it cannot be deemed merely 'directory.' "

10

(*Id.* at p. 1207.)  "The key issue is whether the record as a whole establishes that the juvenile court was aware of its discretion to treat the offense as a misdemeanor and to state a misdemeanor-length confinement limit."  (*Id.* at p. 1209.)

A juvenile court's failure to make the necessary declaration "requires remand . . . for strict compliance with Welfare and Institutions Code section 702."  (*Manzy W., supra,* 14 Cal.4th at p. 1204.)  On remand, the maximum period of physical confinement may need to be recalculated based on the juvenile court's express declaration.  (See *id.* at p. 1211.)

In this case, N.H.'s vehicular manslaughter and driving under the influence and causing injury offenses could have been punishable as either felonies or as misdemeanors.  (See *People v. Traylor* (2009) 46 Cal.4th 1205, 1210, fn. 2; Veh. Code, § 23554.)  The petition, the minute orders from the jurisdictional and the dispositional hearings, and the juvenile court's oral pronouncement at the jurisdictional hearing referred to counts 1 through 3 as felonies.  Nevertheless, there is nothing on the record demonstrating that the court was aware of its discretion and exercised that discretion to treat these allegations as misdemeanors.  Therefore, remand is appropriate to allow the court to make an express declaration as to whether the offenses are felonies or misdemeanors.  (See *Manzy W.*, *supra*, 14 Cal.4th at p. 1209.)  In the event that the court elects to treat the offenses as misdemeanors, it shall recalculate the MTC accordingly.

### *III.  Conviction of a Lesser Included Offense*

Next, N.H. contends that counts 2 and 3 (driving under the influence and causing injury) and the attached enhancements must be stricken as they are lesser included offenses of count 1 (vehicular manslaughter).

"In California, a single act or course of conduct can lead to convictions 'of any number of the offenses charged.'  [Citations.]  However, a judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses. [Citations.]"  (*People v. Ramirez* (2009) 45 Cal.4th 980, 984.)  A defendant cannot be

11

convicted of both a lesser included offense and the greater offense. (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.) Where a defendant has been convicted of both, the conviction of the lesser included offense must be reversed and any attached enhancements stricken. (*People v. Binkerd* (2007) 155 Cal.App.4th 1143, 1150-1151 (*Binkerd*).)

N.H. primarily relies on *People v. Miranda* (1994) 21 Cal.App.4th 1464, in which the appellate court determined that Vehicle Code section 23153 is a lesser included offense of Penal Code section 191.5. (*Id.* at p. 1468.) In that case, the court explained that where "[o]ne person who injures a person while driving under the influence commits a violation of Vehicle Code section 23153; and if that person dies from that injury— whether immediately or sometime later—a violation of Penal Code section 191.5 has occurred." (*Id.* at p. 1468; see also *Binkerd*, *supra*, 155 Cal.App.4th at p. 1148.)

However, in instances where in a single incident a defendant commits vehicular manslaughter as to one individual and also causes injury to individuals other than the manslaughter victim, separate punishment is permissible. (See *People v. McFarland* (1989) 47 Cal.3d 798, 803-804; *People v. Thompson* (2009) 180 Cal.App.4th 974, 978.) In this case, N.H. caused great bodily injury to C.D. and A.D., who were individuals other than the manslaughter victim. Thus, the allegations as to counts 2 and 3 and the attached enhancements as to victims, C.D. and A.D., were properly sustained.

However, the enhancements attached to counts 2 and 3 as to victim J.W. present a problem. N.H.'s sentence on counts 2 and 3 were enhanced under Penal Code section 12022.7, subdivision (a) for each person she personally inflicted great bodily injury upon, including J.W. An enhancement under Penal Code section 12022.7, subdivision (a) cannot apply to crimes of murder or manslaughter. (Pen. Code, § 12022.7, subd. (g); see also *Binkerd*, *supra*, 155 Cal.App.4th at p. 1149 [enhancements of lesser included offense must be stricken].) Therefore, the enhancements attached to counts 2 and 3 as to victim, J.W., must be stricken.

12

### IV. *Maximum Time of Confinement*

Lastly, N.H. argues that the juvenile court improperly calculated the MTC at 23 years and four months. She contends that the MTC should be 11 years 8 months (upper term, including enhancements, for the principal offense, plus one-third the mid-term and enhancements for each subordinate offense). The Attorney General disagrees with N.H.'s proposed calculation, but agrees that the MTC was miscalculated, as it appears that the court based its calculation on the original petition. The original petition alleged gross vehicular manslaughter under subdivision (a) of Penal Code section 191.5, rather than vehicular manslaughter under subdivision (b).

Although it appears that the MTC was miscalculated, there is nothing in the record indicating how the juvenile court calculated N.H.'s MTC to be 23 years 4 months. Therefore, on this record, we are not confident that we can accurately correct the error. On remand, we direct the juvenile court to recalculate the MTC and to articulate how the court arrived at the final result.

### DISPOSITION

The dispositional order is reversed. The matter is remanded to the juvenile court with directions to do the following: (1) make an express declaration, pursuant to section 702, as to whether counts 1 through 3 are felonies or misdemeanors, (2) strike the Penal Code section 12022.7, subdivision (a) enhancements attached to counts 2 and 3, as to victim, J.W., and (3) recalculate the maximum time of confinement in conformity with this opinion.

13

_____

RUSHING, P.J.

WE CONCUR:

_____

PREMO, J.

_____

MÁRQUEZ, J.