Filed 9/26/13  In re M.P. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re M. P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | C071758 |
| Plaintiff and Respondent, | (Super. Ct. No. JV133715) |
| v. | |
| M.P., | |
| Defendant and Appellant. | |

Delinquent minor Mervin P. appeals from a dispositional order, contending the juvenile court should have deferred entry of judgment (DEJ), should not have ordered him into "Level A" placement, and improperly imposed certain probation conditions. The People concede the matter must be remanded for the juvenile court to reconsider one of the challenged probation conditions.  We agree and accept the concession, but reject all other claims.  Accordingly, we shall remand the cause for reconsideration of that probation condition.

1

# FACTUAL AND PROCEDURAL BACKGROUND

The petition alleged the minor, age 16, committed two counts of lewd conduct (Pen. Code, § 288, subd. (a)) against two different victims.

The minor was deemed statutorily eligible for DEJ.

The Intake Report showed the minor had tried to kill himself twice, once by stabbing himself and once by hanging himself, and he began cutting himself at age 13. He smoked marijuana daily. He had been diagnosed with depression, Attention Deficient and Hyperactivity Disorder, "and possible Bipolar Disorder." He was disrespectful, and quick to anger. He had a poor school attendance record, and had been suspended for possession of marijuana, a marijuana pipe, and fighting. His mother wanted him detained to ensure he graduated from high school. She could not handle stress, due to her multiple sclerosis. Two previous CPS referrals had been "substantiated for caretaker absence and general neglect of the minor and siblings."

The juvenile court ordered the minor detained on March 12, 2012.

The probation department evaluated releasing the minor "on Electronic Monitoring to his grandfather, Robert [B.]" Robert B. was not "volunteering" to take the minor into his home, but was willing to do so, but stated if any household rules were broken, he would have the minor picked up by probation. The minor had lived with Robert B. in the past. While doing so, he had been expelled from school, had not followed household rules, and had allegedly committed one of the instant offenses. Because of the "calculated and manipulative" nature of the offenses, against one male and one female victim, and the lack of assurance that release to Robert B. would be safe, probation recommended against placement with him.

A "Joint Assessment" report was filed on April 13, 2012 to address whether the minor should be treated as a dependent or delinquent. (See Welf. & Inst. Code, § 241.1; Cal. Rules of Court, rule 5.512.) This report summarized the offenses, generally, as follows: On January 22, 2012, the minor was at his aunt's home, took a nine-year-old

2

male cousin (victim 1) into a room and placed his penis in his cousin's mouth. Victim 1 told his mother that the minor had been making him suck the minor's penis "for a long time." Victim 1's mother reported that the minor's mother allowed him to "smoke cigarettes, drink and smoke weed in her presence." Victim 1 told a deputy the sexual conduct had happened twice, but during a SAFE interview (Special Assault Forensic Evaluation) reported that it only happened once. On October 15, 2011, the minor was at his half-brother's house and lured a four-year-old female relative (victim 2) into a room with the promise of candy and put his penis in her mouth. Robert B. was called, picked the minor up, and said he "didn't want the minor in trouble and said he would deal with him." Victim 2 confirmed the incident during a SAFE interview, indicating the minor ejaculated in her mouth and gave her a Jolly Rancher.

The minor's mother reported that she "really doesn't know her son" and did not know his history from ages 7-14 because he had been living with his now-deceased father. Her medical condition and fear for her young daughter's safety precluded her from taking the minor into her home. Robert B. again stated he would house the minor, but would return him if he violated directives or got into trouble at school.

The joint assessment report found the minor "not suitable" for DEJ because of his "problematic" behavior at home and in the community, "Additionally, the victims were of a young age, they knew and trusted the minor and his actions appear to be calculated." Both the social worker and the probation officer found delinquency treatment, not dependency treatment, would better serve the minor's needs overall. Because of the "calculated and manipulative" nature of the offenses against young family members who trusted the minor, the report recommended wardship with a "Level A" placement, and

recommended that the minor complete an alcohol and drug assessment, "a Juvenile Sex Offender Treatment Program, and Family counseling."[1]

An addendum evaluated the home of a great aunt, but found it to be unsuitable, in part due to the presence of a registered sex offender.

Another addendum evaluated the minor's maternal great uncle, James R., who worked full time and lived in a three-bedroom house with his parents. When a probation officer initially went to the home, James R.'s parents said they knew nothing about having the minor live there, and they did not know the minor.

On May 31, 2012, the juvenile court found delinquency would best serve the minor's and society's needs. The minor admitted count 1, and count 2 was dismissed in light of the admission, but could be considered for dispositional purposes, and the factual basis was taken from "the social study report and intake [report.]" A Penal Code section 288.1 (§ 288.1) report was ordered, and the request for placement with James R. was deferred pending receipt.

A dispositional report explained that 15 incidents had occurred while the minor was in custody, mostly involving "negative behavior at school." The report deemed the minor unsuitable for DEJ because the "very young victims" "trusted the minor and his actions appeared to be sophisticated and calculated." Further, the minor had had "an unstable home environment . . . multiple caregivers and a lack of supervision and firm limits. Additionally he has not been doing well in school and has a history of substance abuse." The probation department again recommended Level A placement as the best disposition for the minor.

_____

[1] "Level A" is in-state placement outside the home, and may be with a relative or friend, in licensed foster care, in a licensed group home, or in a licensed residential treatment facility.

Psychologist Dr. Blake Carmichael's section 288.1 report outlined the minor's chaotic childhood, in which he had "many caregiver changes" due to his mother's deteriorating physical condition, and his abandonment by his father, who died when the minor was 14. The minor had a long history of anger and aggressiveness, sexual experimentation beginning at age 7, and 30 different sexual partners beginning at age 12; he claimed to be exclusively heterosexual and to prefer "girls his age or older." The minor denied remembering the charged offenses, and thought that might be due to his ecstasy and alcohol abuse. The minor was depressed and needed treatment for substance abuse and needed to learn how to control his emotions to avoid inappropriate outbursts. A formal juvenile sex offender treatment program was not "essential" because his offenses stemmed from "a more general pattern of antisocial behavior" which was "more emotional and substance related," instead of from sexual deviance or a predatory nature. But it was "highly recommended" that his treatment include "psychosexual interventions that address sexual boundaries, non-abusive sexual behavior, and impulse control strategies[.]" The minor posed "a moderate risk to other children. If [he] does not participate in [recommended services], then it is expected that his risk to others could increase. This risk is primarily associated with his active substance abuse." A "placement that provides high levels of direct supervision[,]" that is, "a residential placement that has treatment services on-site" would be best. "Weekly outpatient services alone are very unlikely to address [his] needs, particularly considering his pervasive behavioral disruption, and continued defiance in his controlled setting."

The minor's dispositional memorandum sought return of the minor to the mother. However, at the dispositional hearing, the mother testified she wanted the minor to live with James R., who had helped raise her. Robert B. also testified the minor should live with James R. James R. testified he was employed full time by the State of California, had no criminal record apart from traffic tickets, and although he had no children of his own, he had helped raise the minor and other children, and he thought he could provide

5

an adequate home for the minor. James R. had now spoken to his parents about housing the minor, and they were willing to allow the minor to live in their home. Minor relatives visited James R., some under the age of 14, but he could ensure compliance with any court order requiring the minor to avoid children. Victim 1's mother prepared a statement opposing release of the minor to his family because "He is a predator and doesn't need to be around other children right now. He needs treatment and needs to be placed in a treatment program."

The trial court declared the minor to be a ward and granted probation in Level A placement, and imposed various probation conditions.

The minor timely filed this appeal.

## DISCUSSION

### I

### *DEJ*

The minor contends the juvenile court abused its discretion in finding him unsuitable for DEJ treatment. We disagree.

DEJ allows certain minors to admit guilt, take responsibility for their actions through specified consequences, and have the delinquency petition dismissed and the arrest treated as if it never happened. (Welf. & Inst. Code, §§ 791, subd. (b), 793, subd. (c).) First, the minor must be deemed statutorily *eligible* for DEJ, based on the lack of a record, nature of current offense, age, and other objective factors. (See Welf. & Inst. Code, § 790.) Second, the juvenile court must determine whether the minor is *suitable* for DEJ, "and would derive benefit from education, treatment, and rehabilitation," in which case the court may grant DEJ. (Cal. Rules of Court, rule 5.800(b)(2).)

If a minor is eligible for DEJ, and admits the charges, "the court may summarily grant DEJ or refer the matter to the probation department for further investigation. The department is required to take into consideration 'the defendant's age, maturity, educational background, family relationship, demonstrable motivation, treatment history,

6

if any, and other mitigating and aggravating factors in determining whether the minor is a person who would be benefited by education, treatment, or rehabilitation.' [Citation.] The trial court makes 'the final determination regarding education, treatment, and rehabilitation of the minor.'" (*Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, 559 (*Martha C.*); see *In re Kenneth J.* (2008) 158 Cal.App.4th 973, 976-977.)

"[D]enial of deferred entry of judgment is not an abuse of discretion merely because the minor has satisfied the eligibility requirements[.]" (*In re Sergio R.* (2003) 106 Cal.App.4th 597, 607.) Generally speaking, because the purpose of DEJ is to focus juvenile court resources on more serious offenders and give first time, non-violent offenders a non-custodial opportunity to demonstrate accountability and reform, denial of DEJ "is proper only when the trial court finds the minor would not benefit from education, treatment and rehabilitation." (*Martha C.*, *supra*, 108 Cal.App.4th at p. 561; see *In re A.I.* (2009) 176 Cal.App.4th 1426, 1433-1434.) But a minor's engagement in sophisticated criminal activity may support a juvenile court's conclusion that DEJ would not comport with the minor's needs and best promote rehabilitation. (See *In re Damian M.* (2010) 185 Cal.App.4th 1, 5-6 (*Damian M.*) [distinguishing *Martha C.*].)

On appeal the minor reargues various factors that may have supported DEJ. But the mere presence of some support in the record for granting DEJ does not establish an abuse of discretion in denying DEJ. "An appellate court will not lightly substitute its decision for that rendered by the juvenile court. We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them." (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395.) Discretion is abused when a trial court misapplies applicable legal standards or acts arbitrarily, exceeding the bounds of reason. (See *People v. Giminez* (1975) 14 Cal.3d 68, 72; *County of Yolo v. Garcia* (1993) 20 Cal.App.4th 1771, 1778.)

7

Here, "The court was aware of its discretion and stated sound reasons for the manner in which that discretion was exercised. The court's reasoning is certainly supported by the record." (*Damian M.*, *supra*, 185 Cal.App.4th at p. 5.) The minor's offenses reflected planning, and he abused young relatives for sexual gratification. Although the parties agree on appeal the offenses did not *disqualify* the minor from DEJ,[2] his offenses were extremely serious. While in a structured setting, the minor committed numerous violations. Dr. Carmichael opined that the minor's risk of reoffense was tethered to his substance abuse, and absent a residential placement, it was unlikely the minor would comply with services.

Thus, the juvenile court had ample grounds to find that the minor was unsuitable for DEJ. We find no abuse of discretion.

II

*Level A Placement*

The minor contends the juvenile court should have placed him with James R. But again, he reargues the facts favorable to his position and ignores the facts that weigh against the minor's placement with James R.

As the minor acknowledges, "the court has broad discretion to choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public." (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.) Both based on the offenses committed and the minor's poor conduct in custody, the juvenile court found that "the minor has serious emotional difficulties that cannot be properly treated in Mr. R[.]'s home or any home outside of a placement, and that that's

_____

[2] The juvenile court record reflects some confusion as to whether the minor's non-forcible lewd conduct rendered him ineligible for DEJ--it did not. (See Welf. and Inst. Code, §§ 707, subd. (b)(6) [Pen. Code, § 288, subd. (b), *but not subd. (a)*, listed], 790, subd. (a)(2).) We note that the confusion reflected in the record is exacerbated by minute orders that failed to correctly report the juvenile court's oral findings.

8

the recommendation, also [in the section 288.1 report.]"  The court hoped that *after* the minor had progressed on the serious issues identified by the section 288.1 report, James R.'s home would still be available to the minor.

James R. testified he had *helped* raise children.  There was no evidence that any of the children he had helped to raise had intensive needs like the minor's.  Helping occasionally to raise children does not equip a person to become the full-time caregiver of a highly challenged and recalcitrant teenage sex offender.  Moreover, James R. was fully employed, and although he described ways he might accommodate the minor's need for supervision while working, the juvenile court could rationally find his well-intentioned hopes did not provide sufficient assurance that the minor would have the supervision required to maximize his chances of reform.  (See *In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329 ["The court was not required to take all the information properly considered by it at face value.  The court was entitled to evaluate the credibility of the minor [and any other witnesses] and the weight to be afforded to the psychological evaluation, as well as to accept or reject the recommendations of the probation officer"].)  We see no abuse of discretion.

### III

### *Probation Conditions*

The minor challenges three separate conditions of his probation.

Generally speaking, "The juvenile court has wide discretion to select appropriate conditions and may impose '"any reasonable condition that is 'fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.'"'"  (*In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K*).)  In the case of adult probation, "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality[.]'"  (*People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*).)  But

9

a juvenile cannot refuse probation, and a condition deemed too broad for an adult may nevertheless be appropriate for a juvenile.  (*Sheena K.*, *supra*, 40 Cal.4th at p. 889.)

### A.      *Sex Offender Treatment Program*

The minor contends the trial court abused its discretion by requiring a sex offender treatment program as a condition of probation.  We disagree.[3]

The juvenile court acknowledged Dr. Carmichael thought juvenile sex offender treatment counseling was not essential, but the juvenile court was not bound by Dr. Carmichael's view.  (See *People v. Sword* (1994) 29 Cal.App.4th 614, 629.)  And even Dr. Carmichael opined the minor posed a moderate risk to other children.  Given the extremely serious nature of the two sexual offenses the minor committed, the juvenile court could rationally find the minor would benefit from such a sex offender treatment program.  The condition that the minor receive treatment was *directly* "related to future criminality" and therefore was permissible.  (*Lent*, *supra,* 15 Cal.3d at p. 486.)

### B.      *Scienter for Alcohol and Drug Condition*

One general condition of probation imposed by the juvenile court provides in part that the minor "Not use or possess alcohol or illegal drugs[.]"  The minor faults this condition because it fails to express a scienter requirement.

In *People v. Patel* (2011) 196 Cal.App.4th 956 (*Patel*), we held that, henceforth, "We construe every probation condition proscribing a probationer's presence, possession, association, or similar action to require the action be undertaken knowingly.  It will no longer be necessary to seek a modification of a probation order that fails to expressly

_____

[3]  We do not agree with the People that this contention is forfeited.  In arguing against placement in a group home, the minor's trial counsel emphasized that Dr. Carmichael had concluded sex offender treatment was not necessary; this argument adequately preserved the point now raised.

include such a scienter requirement." (*Patel*, 196 Cal.App.4th at pp. 960-961.) We adhere to that view.

   C.   *Age Limit in the Presence of Children*

The joint assessment report recommended as a special condition of probation that the minor "4. Not be without parental or responsible adult supervision when you know or reasonably should know you are in the presence of children under the age of [space] years[.]" There was no blank line to indicate the omission, only a space.

The dispositional report had an identical provision on page 9, with a space but no blank for insertion of an age. On the record, the juvenile court imposed "the special conditions . . . set out on page 9 and 10" of the dispositional report. The minute order again reflects the special condition of probation that the minor "4. Not be without parental or responsible adult supervision when you know or reasonably should know you are in the presence of children under the age of [space] years."

This probation condition is unintelligible and vague as a matter of law, as the People concede. (See *Sheena K.*, *supra*, 40 Cal.4th at pp. 887-889.) The matter must be remanded for the trial court to exercise its discretion to determine whether such a condition is warranted and, if so, specify the scope of such condition.

## DISPOSITION

The cause is remanded for reconsideration of the "presence of children" probation condition. In all other respects, the judgment is affirmed.


                                   DUARTE          , J.

We concur:


         ROBIE             , Acting P. J.

         MURRAY           , J.


11