Filed 11/7/13  In re B.B. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re B.B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>B.B.,<br><br>    Defendant and Appellant. | F065556<br><br>(Kern Super. Ct. No. JW127061-00)<br><br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br>**[NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion filed herein on October 11, 2013, be modified in the following particulars:

1.  On page 9, the first paragraph beginning "The record reflects" is deleted.

2.  On page 15, the second full paragraph beginning "The record further undermines" is deleted and the following paragraph inserted in its place:

> The record further undermines appellant's claim that he signed the waiver and admitted the allegations because he was promised his immediate release.  At the evidentiary hearing on his motion to withdraw, appellant admitted he signed the waiver and verbally admitted the allegations in court, which occurred on August 12, 2011.  However, he claimed he only made those admissions because his attorney promised he would be released from juvenile hall if he waived his rights, he did not read

the waiver form, and he signed the form because he wanted to be released from juvenile hall.  Appellant was not immediately released from custody after he signed the waiver form and made the admissions on August 12, 2011.  Even though he remained in custody pending the DEJ evaluation, he did not immediately move to withdraw his waiver and admissions, or claim he was supposed to be released after he signed the waiver and admitted the allegations at the August 12, 2011, hearing.

There is no change in the judgment.  Appellant's petition for rehearing is denied.


_____

DETJEN, J.


WE CONCUR:


_____

LEVY, A.P.J.


_____

KANE, J.

2.

Filed 10/11/13 (unmodified version)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re B.B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>B.B.,<br><br>    Defendant and Appellant. | F065556<br><br>(Kern Super. Ct. No. JW127061-00)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County. Jon E. Stuebbe, Judge.

Linda K. Harvie, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Before Levy, Acting P.J., Kane, J. and Detjen, J.

## INTRODUCTION

Appellant B.B. admitted multiple allegations in a juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a)).  He was found eligible and suitable for Deferred Entry of Judgment (DEJ) and placed in the program subject to specific terms and conditions of probation.  One year later, he was found in violation of the terms of DEJ.  At that time, appellant moved to withdraw his admissions to the original petition and claimed his admissions were involuntary, and he was never advised by his attorney or the court as to how he could violate the terms of DEJ.  The court denied his motion.

On appeal, appellant argues the court should have granted his motion to withdraw his original admissions because his admissions were not knowing and voluntary, and he was never advised about the nature and circumstances of the DEJ program.  Appellant also argues the court failed to find a factual basis for his admissions, and the court abused its discretion when it found two of the offenses were felonies and not misdemeanors.  We affirm.

## FACTS[1]

On July 28, 2011, officers from the Bakersfield Police Department responded to a burglary dispatch.  A witness reported she saw three suspects in the backyard of a residence, and they were breaking a window.  There was damage to the residence's door and windows.  Another witness contacted the officers and pointed out the three suspects, who were still in the area.

The police detained appellant, D.W., a documented member of the Westside Crips, and D.P., a documented member of the Country Boy Crips.  The officers found a loaded firearm in close proximity to where the three suspects were detained.  Appellant was wearing a hat with the letter "W" on it.  An officer reported the hat was significant

---

[1] Given appellant's admissions, the following facts are from the probation report.

because it represented the Westside Crips. The attempted burglary occurred within the traditional boundaries of the Westside Crips.

## PROCEDURAL HISTORY

On August 1, 2011, a juvenile wardship petition was filed in the Superior Court of Kern County which alleged appellant, who was 16 years old, committed count I, attempted residential burglary (Pen. Code,[2] §§ 664/460, subd. (a)); count II, carrying a loaded firearm (§ 12031, subd. (a)(2)(F)); count III, active participation in a criminal street gang (§ 186.22, subd. (a)); and count IV, misdemeanor vandalism (§ 594, subd. (b)(2)(A)). Appellant was in custody in juvenile hall.

### Determination of DEJ Eligibility

The appellate record contains a copy of Form JV-750, "Determination of Eligibility, Deferred Entry of Judgment—Juvenile." There is no file stamp to indicate when Form JV-750 was filed. The form reflects the prosecutor determined appellant was eligible for DEJ. The following preprinted boxes were checked: he was 14 years of age or older; he was alleged to have committed at least one felony; there was no allegation he committed an offense described in Welfare and Institutions Code section 707, subdivision (b); he had not previously been declared a ward of the court based on the commission of a felony; he had never been committed to the California Youth Authority; he had successfully completed a previous informal probation; and his probation had never been revoked.

At the bottom of Form JV-750, there is a checkbox to indicate whether Form JV-751, "Citation and Written Notification for Deferred Entry of Judgment—Juvenile" was attached. This box was not checked.

Even though that box was not checked, the record also contains Form JV-751, "Citation and Written Notification for Deferred Entry of Judgment—Juvenile." This

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

3.

document was filed on August 1, 2011. It provides notice to appellant and his parent or guardian of the hearing date. It also contains the lengthy, preprinted notification about the nature of and circumstances of the DEJ program, what type of probation conditions could be imposed, and the circumstances under which the juvenile could be found in violation of probation and DEJ.

The instant record does not contain proofs of service for either Form JV-750, on appellant's eligibility for DEJ; or Form JV-751, the notice of hearing and notification of the DEJ's terms and conditions, to indicate whether one or both of these forms were served on appellant, his parent or guardian, or his attorney. As we will explain, however, the record shows that appellant, his parent, and his attorney were well aware that appellant had been found eligible for DEJ.

On August 2, 2011, appellant appeared for the detention hearing with his father and his attorney. He denied the allegations, and the court ordered appellant to remain in juvenile hall.

## The Waiver of Rights Form

On August 12, 2011, an "Advisal and Waiver of Rights" Form was filed which was initialed and signed by appellant. It stated that he would admit all four allegations in the petition; his attorney had explained his constitutional rights to him; he understood his constitutional rights; he knowingly, intelligently, and voluntarily waived each of those rights "in order to make the admissions and to take advantage of any promises made to me"; and he had not been promised anything to waive his rights "[o]ther than receiving D.E.J. acceptance." Appellant initialed each statement.

Appellant also initialed the following advisement:

"I understand what I am accused of doing and what the charge(s) are in the count(s) I am admitting. I understand what might happen to me based on my admission(s), including the possibility of probation, commitment to Juvenile Hall, Avenues to Change …, commitment to Camp Erwin Owen …, commitment to Kern Crossroads Facility …, or the Department of Corrections and Rehabilitation Division of Juvenile Justice .…"

4.

Appellant initialed the advisement that he had talked to his attorney about the charges, his rights, possible defenses, and possible sentences, and the maximum term of confinement was four years four months.

Appellant's attorney signed the form and declared he explained each provision and was satisfied appellant understood. He further declared that he joined in appellant's waiver and he stipulated "to a factual basis for each admission."

## Appellant's Admissions

Also on August 12, 2011, appellant appeared in court with his brother and his attorney. Appellant's attorney stated appellant's father had previously been present but had to leave because of health issues.

The court reviewed the waiver of rights form, showed it to appellant, and asked if he initialed each line himself. Appellant said yes. The court stated that appellant's initials indicated he understood his rights, and asked him if that was true. Appellant said yes. The court asked appellant if he signed the form himself, and understood he was signing a waiver of rights form, and he said yes.

The court asked appellant if anyone made any promises to get him to sign the form, other than the DEJ referral. Appellant said no. Appellant's attorney clarified:

> "[T]hat waiver and admission is conditioned upon his being accepted into the deferred entry of judgment program. And he reserves the right to withdraw that waiver in the event he's not found suitable and admitted."

The court acknowledged appellant had only been referred to DEJ and not yet found suitable, and asked appellant if that was correct. Appellant said yes. The court asked appellant if he was waiving his rights of his own free will, and appellant said yes.

The court asked appellant's attorney if he stipulated to a factual basis for appellant's admissions to all of the allegations. Appellant's attorney said yes, "conditioned upon his being accepted" into DEJ.

The court advised appellant of the allegations in the juvenile petition, and appellant admitted all four allegations. The court again asked appellant if anyone

5.

promised any special favors to him in exchange for his admissions, "other than what's been stated as far as DEJ is concerned," and appellant said no.

The court found appellant knowingly, intelligently, and voluntarily waived his rights and entered his admissions, and there was a factual basis for the admissions.

Appellant's attorney asked the court to release appellant from custody to a suitable relative. The court declined to do so. It ordered appellant to remain in custody and set the dispositional hearing.

**Probation Report**

On August 26, 2011, the probation report was filed, which contained a summary of the facts regarding the criminal allegations, as set forth in the factual statement above. The report stated that appellant had requested DEJ based on his admissions to the allegations in the petition, he was eligible and suitable for DEJ, and recommended certain terms and conditions of probation. The report stated appellant lived with one of his two brothers. Appellant and his father had a good relationship, but the father was unable to care for appellant because of health problems.

In the course of the report, the probation officer stated that appellant had been extensively interviewed about his substance abuse issues, his attendance problems at school, his expressed motivation to change his behavior, and that he knew it was important for him to succeed in the DEJ program.

> "The minor appears to know what he needs to do in order to be successful and complete the Deferred Entry of Judgment program; however, he is going to have to look beyond his current situation and live up to his whole potential. *The minor was informed if [he] fails Deferred Entry of Judgment, a commitment program may be recommended.*" (Italics added.)

**Dispositional Hearing**

On August 26, 2011, the court conducted the dispositional hearing. Appellant was present with his brother, his father, and his attorney.

The court read the probation report and noted appellant admitted the allegations so he could be considered for DEJ. The court advised the parties that appellant had been

6.

found eligible and suitable for the DEJ program. The court asked appellant's attorney if there was any reason not to proceed. Appellant's attorney replied:

> "I continue to believe that the application for [DEJ] is appropriate, and I think that [appellant], given the appropriate support, will be successful in the program. I think he has the substance that it is going to take to complete the program. He'll have this case dismissed in relatively short order. [¶] His father is adamantly opposed to [appellant] taking the deferred entry of judgment. [Appellant] … having discussed this matter with me, was initially confused with regard to whether he wanted to take the deferred entry of judgment or not. And I told him that it was his decision. I was clear that I was not trying to compel him to do anything or shove something down his throat that he did not want to do. He vacillated as to what he wanted to do and/or not to do. *And I believe at this point it's his decision to proceed with the deferred entry of judgment disposition.* [¶] So that being the case, I don't see a reason not to proceed." (Italics added.)

The court advised appellant that it did not care whether or not his case went to a hearing or he went into the DEJ program. The court explained that the "upside" of DEJ was that he would get out of custody, and the charges would be dismissed and eliminated from his record if he followed the court's orders.

> "[THE COURT]: Down side, of course, is *if you cannot follow the terms and conditions*, then you got this record later on, and then you get locked up because you violated the terms of your probation. That's the down side.

> "On the other hand, if you say, 'I do not want to do that deferred entry of judgment. I want to go to trial,' you stay in custody and who knows what will happen at the trial, who knows whether you're guilty, who knows whether you're not guilty. I have no idea how that's going to turn out. If you're not guilty, the day you're found not guilty, you go home. The day you're found guilty, you stay in custody for awhile.

> "Again, it doesn't make a difference to me what you choose to do, but it's your choice, ultimately.

> "Do you want to go with the deferred entry of judgment program, or do you want to have your case go to trial?

"[APPELLANT]:  I'll go way."<sup>3</sup>  (Italics added.)

Thereafter, the court found appellant eligible for DEJ pursuant to Welfare and Institutions Code section 790, placed him on probation, and released him to the custody of his father and/or his brother.  The court imposed several terms and conditions, including the completion of 80 hours in the juvenile court work program and to work as assigned; attend and satisfactorily complete Blanton Academy, obey all rules and regulations, and immediately enroll; not to possess or use any weapons; not to possess, use, or consume any illegal drugs or intoxicants; and attend school regularly and obey all school rules.

At the conclusion of the hearing, the court advised appellant:

> *"[Y]ou know the things you've got to do:  80 hours in the work program; can't be in possession of dope, stolen property, or weapons; got to go to school; got to obey the law.  You do all that, a year from now, none of this happened*."  (Italics added.)

Neither appellant nor his attorney objected to the court's DEJ orders.

The record reflects that appellant was not immediately released from custody on the day of the dispositional hearing and spent a few more days in juvenile hall.

### PROBATION VIOLATION

On April 6, 2012, the Kern County Probation Department filed a memorandum that appellant violated the terms of the DEJ program (Welf. & Inst. Code, § 793) as follows:  he tested positive for marijuana in September 2011 and January 2012; he failed to complete the juvenile work program; he failed to attend school regularly, and he was

---

<sup>3</sup> Appellant concedes that his response amounted to his acceptance of DEJ. Appellant does not argue that his response was equivocal or constituted a refusal of DEJ. Appellant believes the truncated nature of his response is a result of a typographical error in the reporter's transcript.  As we will discuss in sections I and II, *post*, appellant instead contends that he only accepted DEJ because he believed he would be immediately released from juvenile hall, and he was never advised how he could violate the terms and conditions of DEJ.

dropped from Blanton Academy because he failed to comply with attendance requirements.

On April 13, 2012, appellant denied the allegations.

On April 30, 2012, the court convened a hearing regarding appellant's possible exclusion from the DEJ program. Appellant failed to appear and a bench warrant was issued.

## MOTION TO WITHDRAW

On May 3, 2012, the bench warrant was returned, and appellant appeared in court with his father. Appellant orally moved to withdraw his original admissions to the four counts, as entered on August 12, 2011.

On May 9, 2012, appellant's attorney filed a written motion for appellant to withdraw his admissions to the original petition. The motion asserted that at the August 26, 2011, dispositional hearing, appellant did not thoroughly understand the circumstances or consequences of his admissions, and "the significance of what may be and was a minor violation of the terms of the [DEJ] program." The motion also asserted that appellant "apparently" was not allowed to speak to his father, "who vehemently" opposed his entry into DEJ.

On May 14, 2012, the prosecution filed opposition, and asserted appellant's motion should be denied because he signed the written plea form, and the court fully advised him of his constitutional rights.

### Continued Hearing

On May 15, 2012, the court released appellant to his father's custody on "no slack" terms, that he was limited to going between his home and school. On June 7, 2012, the court lifted the no slack terms. On July 11, 2012, the probation department filed a report that appellant repeatedly left his home without permission, failed to attend school, and his whereabouts were unknown.

9.

## The Court's Hearing on Appellant's Motion

On July 11, 2012, the court conducted an evidentiary hearing on appellant's motion to withdraw and his alleged violation of DEJ. Appellant testified that he initially denied all the charges, but his attorney "kept trying to coerce me to take DEJ" and appellant "didn't understand it." Appellant did not understand that he was giving up his constitutional rights to present a defense and call witnesses. His attorney promised he would get out of juvenile hall if he waived his rights.

Appellant testified he did not read any of the language on the waiver of rights form, he knew his father did not want him to accept DEJ, but he signed the form anyway because he wanted to be released from juvenile hall. On cross-examination, appellant admitted he initialed each part of the waiver form and signed the document, but insisted he did not read anything and just signed his name so he could be released from juvenile hall.

## The Court's Denial of the Motion to Withdraw

After appellant testified, the prosecutor argued he failed to meet his burden to withdraw his admissions. The prosecutor noted that appellant's release from juvenile hall was part of the bargain in exchange for his admissions.

Appellant's attorney argued appellant did not understand the ramifications of waiving his rights and admitting the allegations, and he only signed the advisement form so he could get out of juvenile hall.

The court denied appellant's motion and found he failed to carry his burden of proof to withdraw his admissions.

> "I do note that he didn't get out on the day he made the admission. He had to wait for the DEJ suitability report, which was from the 8th to the 26th [of August 2011]. And on the date he made the admission, the record doesn't reflect that his father was here. The record reflects his brother was here. *His father wasn't here until the disposition, the deferred entry of judgment*

10.

*disposition date, so the testimony is inherently unbelievable*." (Italics added.)**4**

## The Probation Violation

The court then conducted an evidentiary hearing on appellant's alleged probation violations. Robert Espinosa, appellant's probation officer, testified he met with appellant both before and after he entered his admissions and was placed in the DEJ program. Espinosa testified that on August 15, 2011, he explained the terms and conditions of DEJ to appellant, consistent with his practices of informing minors about DEJ.

> "Every time I talk to a minor about deferred entry of judgment, I pretty much tell them you pretty much have to be perfect for that one full year. *You know, you can't make any mistakes. You can't do anything. If you do, all of the charges are going to come up against you at your review hearing.* [¶] … [¶] … I tell them what, most likely, my recommendations will be. *You know, obey your parents, attend school regularly, obey all school rules. If you have drug orders, you will be randomly drug tested. You cannot test dirty for anything. If he's going to go to Blanton Academy, he has to successfully complete Blanton Academy. I told him the ramifications, if you will, or what the possible other dispositions or options that you were to face if you were to fail DEJ.*" (Italics added.)

Espinosa testified appellant was advised that he was subject to drug testing orders; had to complete 80 hours in the juvenile court work program; enroll in and successfully complete Blanton Academy; and enroll in and attend school. Appellant tested positive for marijuana in September 2011 and January 2012; failed to regularly attend school; failed to perform the required hours in the work program; and he was dropped from Blanton Academy for failing to attend.

---

**4** The court's statements about the presence of appellant's father are not accurate. The record reflects that on August 12, 2011, the day that appellant entered his waivers and admissions, appellant's attorney stated that appellant's father had previously been present but had to leave before the hearing began because of health issues. As we will explain, however, this discrepancy does not alter the correctness of the court's denial of appellant's motion to withdraw.

11.

**The Court's Orders**

The court found appellant had failed DEJ and excluded him from the program.

On July 23, 2012, the court concluded the dispositional hearing; set aside the prior probation orders; and adjudged appellant a ward of the court. The court set appellant's maximum confinement time at four years eight months, and found that counts II and III in the original petition were felonies. The court committed appellant to Camp Erwin Owen.

## DISCUSSION

### I. Denial of Appellant's Motion to Withdraw

Appellant contends the court should have granted his motion to withdraw. Appellant asserts his admissions were not knowing, intelligent, and voluntary because he just wanted to get out of custody. Appellant also asserts he was criminally unsophisticated; the court's advisements were incomplete; he entered the plea against his father's wishes; and his attorney did not explain the nature and consequences of his plea.

We will review the standard of review for a motion to withdraw an admission in a juvenile case.

#### A. Motion to Withdraw

"Penal Code section 1018, which governs the standards for withdrawal of a plea in criminal cases, is not expressly applicable to admissions in juvenile court, and it does not have a statutory counterpart in delinquency proceedings. However, the *principles* that underlie the statute have been imported into delinquency proceedings in other respects. [Citations.]" (*In re Matthew N.* (2013) 216 Cal.App.4th 1412, 1420, italics in original.)[5]

These principles include the following. Guilty pleas and admissions may be withdrawn before judgment and for good cause shown. (§ 1018; *People v. Superior*

---

[5] Under Welfare and Institutions Code section 775, juvenile courts "routinely entertain motions to withdraw admissions." (*People v. Mortera* (1993) 14 Cal.App.4th 861, 865.)

*Court of San Francisco* (*Giron*) (1974) 11 Cal.3d 793, 796.) "Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea. [Citations.]" (*People v. Cruz* (1974) 12 Cal.3d 562, 566.) The moving party has the burden to produce evidence of good cause by clear and convincing evidence. (*People v. Wharton* (1991) 53 Cal.3d 522, 585.)

"[S]ection 1018 … requires liberal construction of its provisions to promote justice. However, the promotion of justice includes a consideration of the rights of the prosecution, which is entitled not to have a guilty plea withdrawn without good cause. [Citation.]" (*People v. Hightower* (1990) 224 Cal.App.3d 923, 928.) "Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged. [Citations.]" (*People v. Hunt* (1985) 174 Cal.App.3d 95, 103.)

The withdrawal of a plea or admission rests in the sound discretion of the trial court, and will not be disturbed on appeal unless an abuse of discretion is clearly demonstrated. The reviewing court must adopt the trial court's factual findings if supported by substantial evidence. (*People v. Wharton*, *supra*, 53 Cal.3d at p. 585; *People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)

###### B. Analysis

The court did not abuse its discretion when it denied appellant's motion to withdraw based on whether he was properly advised of and waived his constitutional rights. As set forth in the procedural history, *ante*, appellant initialed and signed each line in the formal written advisement and waiver of rights. At the hearing, the court carefully reviewed the advisement form and repeatedly asked appellant if he initialed and signed the document, whether he understood his rights and that he was waiving his rights, and whether any promises had been made to induce his waivers and admissions. In response to each question, appellant responded that he understood and waived his rights, and no promises had been made to him.

On appeal, in order to defeat the impact of his written and verbal waivers and admissions, appellant acknowledges that he signed the form, responded to the court's advisements, and admitted the allegations. However, he insists that his "free and clear judgment" was overcome because the court promised that he would be immediately released from custody once he entered his admissions and agreed to DEJ.

The procedural history refutes this assertion. Appellant waived his rights and entered his admissions during the August 12, 2011, hearing. Appellant acknowledged that he was entering his admissions based on his eligibility for DEJ, and conditioned on the determination of whether he was found suitable for DEJ. Neither the court nor his attorney made any statements that he was going to be immediately released upon admitting the allegations in the petition.

At the August 26, 2011, dispositional hearing, the court advised appellant that he was eligible for DEJ. Appellant's attorney explained that appellant's father was opposed to DEJ, but that appellant had decided to accept the terms and conditions and enter the program. The court asked appellant whether he wanted to accept DEJ, and appellant said yes.

During this exchange, the court addressed appellant's custodial status, and explained the "upside" of DEJ was that he would get out of custody, and the charges would be dismissed and eliminated from his record if he followed the court's orders. But the court also advised appellant about the "[d]own side" of DEJ, that if he failed to "*follow the terms and conditions*, then you get this record later on, and *then you get locked up* because you violated the terms of your probation. That's the down side." The court also advised him that he would remain in custody if he decided that he wanted a trial on the allegations. (Italics added.)

The entirety of the exchange demonstrates that the court did not induce appellant to admit the allegations on August 12, 2011, or accept DEJ on August 26, 2011, based on any promises of leniency or the immediate release from custody. The court advised

14.

appellant that while he would be released, he had to comply with the terms and conditions of DEJ or he would "get locked up" for violating probation. As we will discuss in section II, *post*, the court specifically advised appellant about those terms and conditions.

The record further undermines appellant's claim that he agreed to DEJ because he was promised his immediate release. As the court later noted, appellant was not immediately released from custody after the court found he was suitable and he agreed to DEJ on August 26, 2011. Even though he remained in custody, he did not move to withdraw his admissions based on the allegation that he was supposed to be immediately released after the August 26, 2011, hearing.

Appellant also complains that he did not receive any benefits from his admissions since he admitted all the allegations in the petition. To the contrary, appellant received the benefit of the DEJ program—that the entirety of the petition would be dismissed and his record cleared if he complied with the terms and conditions. As we will discuss in section II, *post*, the terms and conditions were not particularly onerous in this case.

Finally, appellant argues his attorney was prejudicially ineffective for failing to "properly investigate" his motion to withdraw. Appellant asserts that if his attorney had conducted a proper investigation, "he would have learned [that appellant] was correct in testifying that he immediately agreed to the DEJ program when the court promised release from custody. Such a promise amounted to good cause for the motion to have been granted."

Appellant's ineffective assistance claim is meritless in light of the record. At the probation violation hearing, appellant's attorney verbally advised the court that appellant wanted to withdraw his admissions. His attorney filed an extensive written motion to withdraw, he requested and obtained an evidentiary hearing, appellant testified at that hearing that he only agreed to DEJ because he thought he would get out of custody, and

15.

his attorney relied on that testimony to argue that the motion to withdraw should be granted. Appellant's attorney was not ineffective based on the record before this court.

## II.   Motion to Withdraw Based on DEJ Advisements

We next turn to appellant's contention that his motion to withdraw should have been granted because he never received the proper advisements about the DEJ program, the terms and conditions, and what conduct would result in violation of DEJ. Appellant asserts he was never advised about "what [he] must do or—more importantly—what he must not do if he wanted to complete the DEJ program," and he did not understand "the consequences of what was essentially a minor violation of the terms of the DEJ program."

### A. DEJ Advisements

We begin with the requirements for the DEJ program. The determination of whether to grant DEJ requires consideration of "two distinct essential elements of the [DEJ] program," which are "*eligibility*" and "*suitability.*" (*In re Sergio R.* (2003) 106 Cal.App.4th 597, 607, fn. 10, italics in original; Welf. & Inst. Code, § 790, subds. (a)(1)-(6).)

The prosecuting attorney has the duty to assess a minor's eligibility for DEJ: "The prosecuting attorney *shall* review his or her file to determine whether [the eligibility requirements set forth above] apply." (Welf. & Inst. Code, § 790, subd. (b), italics added; Cal. Rules of Court,[6] rule 5.800(b).)

If the minor is found eligible for DEJ, the prosecuting attorney "*shall* file a declaration in writing with the court or state for the record the grounds upon which the determination is based, and shall make this information available to the minor and his or her attorney." (Welf. & Inst. Code, § 790, subd. (b), italics added.) Upon finding the minor eligible, the prosecuting attorney "*must* file" a form entitled "*Determination of*

---

[6] All further references to rules are to the California Rules of Court.

16.

*Eligibility-Deferred Entry of Judgment-Juvenile* (form JV-750)," at the time that the section 602 wardship petition is filed. (Rule 5.800(b), first italics added.)

If the prosecutor determines the minor is eligible for DEJ, the prosecutor must serve "written notification to the minor" of his or her eligibility. This notification may be provided in Form JV-751, entitled "Citation and Written Notification for Deferred Entry of Judgment—Juvenile." (See, e.g., *In re C.W.* (2012) 208 Cal.App.4th 654, 659-661 (*C.W.*); Welf. & Inst. Code, §§ 790, 791) This notice "*shall* also include" notice of the hearing, " '[a] full description of the procedures for deferred entry of judgment' [citation] and '[a] clear statement that, in lieu of jurisdictional and disposition hearings, the court may grant a deferred entry of judgment with respect to any offense charged in the petition, provided that the minor admits each allegation contained in the petition and waives time for the pronouncement of judgment' [citation]." (*C.W., supra,* 208 Cal.App.4th at p. 660; § 791, subds. (a)(1)-(a)(3), italics added.)

By comparison, "[i]f it is determined that the child is *ineligible* for deferred entry of judgment, the prosecuting attorney must complete and provide to the court, the child, and the child's attorney" the form JV-750, so stating. (Rule 5.800(e), italics added.)

Once the minor's eligibility is established, the juvenile court has the discretion to determine if the minor is suitable for DEJ after consideration of certain statutory factors. (*In re Usef S.* (2008) 160 Cal.App.4th 276, 283-284 (*Usef S.*); *In re Luis B.* (2006) 142 Cal.App.4th 1117, 1123 (*Luis B.*).)

However, the juvenile court is not required to conduct a suitability hearing if the prosecutor determines the minor is eligible for DEJ, and the minor receives the requisite notice of his or her eligibility, but he or she nevertheless denies the allegations of the petition and requests a contested hearing. (*In re Kenneth J.* (2008) 158 Cal.App.4th 973, 976-980 (*Kenneth J.*); *Usef S., supra*, 160 Cal.App.4th at pp. 281-283.) In such circumstances, the minor's denial of the allegations and insistence on a contested hearing

17.

are "tantamount to a rejection of DEJ." (*Kenneth J., supra*, 158 Cal.App.4th at p. 980; *Usef S., supra*, 160 Cal.App.4th at p. 286, fn. 3.)

### B. <u>Analysis</u>

The instant record reflects the prosecutor completed and filed Form No. JV-750, and determined appellant was eligible for DEJ. The prosecutor also completed and filed Form No. JV-751, written notification as to DEJ. The instant record does not contain proofs of service for either document.

This case, however, does not involve a situation where the prosecutor found the minor eligible for DEJ and failed to comply with the notice requirements, so that the minor denied the petition and requested a hearing without realizing that such conduct effectively waived his right to DEJ. (See, e.g., *C.W., supra*, 208 Cal.App.4th at pp. 660-662.) Nor does it involve the situation where the minor denied the petition and requested a hearing, while the prosecutor completely failed to determine the minor's eligibility, in the absence of any argument that the minor was ineligible. (See, e.g., *Luis B., supra*, 142 Cal.App.4th at pp. 1121-1123.) Instead, the record reflects that all relevant parties were well aware that appellant was eligible for DEJ before he entered his admissions, he entered his admissions on condition that he would be found suitable for DEJ, he was advised of his suitability for DEJ, and he agreed to the terms and conditions of the DEJ program.

Appellant complains that he was forced to accept DEJ against the wishes of his father. His arguments on this point are inconsistent. First, the record indicates that at the August 12, 2011, hearing, his father was initially present but then had to leave the courtroom because of health problems before appellant admitted the allegations. At the dispositional hearing of August 26, 2011, appellant's attorney stated that his father was present and against appellant's acceptance of DEJ, but neither appellant nor his attorney explained the reason for his father's opposition.

Appellant's motion to withdraw his admissions asserted that he "apparently" was not allowed to speak to his father, "who vehemently" opposed his entry into DEJ. At the evidentiary hearing, however, appellant testified he knew his father did not want him to accept DEJ, but again claimed he agreed just to be released from custody. In any event, appellant did not testify that he was not allowed to speak to his father, or offer any details about the reasons for his father's opposition to DEJ.

Next, appellant asserts he was never advised about the nature of the terms and conditions of his DEJ probation, what he had to do to comply with the program, or how he could violate the terms and conditions. This argument is again refuted by the entirety of the record. Appellant was repeatedly advised by the court and his probation officer about the terms and conditions of DEJ, that he had to comply with those terms and conditions, and he would be returned to custody if he violated those terms and conditions.

Indeed, the terms and conditions of appellant's DEJ program were simple and straightforward: the completion of 80 hours in the juvenile court work program and to work as assigned; attend and satisfactorily complete Blanton Academy, obey all rules and regulations, and immediately enroll; not to possess or use any weapons; not to possess, use, or consume any illegal drugs or intoxicants; and attend school regularly and obey all school rules. The court advised him that if he could not follow those terms and conditions, "then you get this record later on, and then you get locked up because you violated the terms of your program." At the conclusion of the dispositional hearing, the court reiterated these points:

> *"[Y]ou know the things you've got to do: 80 hours in the work program; can't be in possession of dope, stolen property, or weapons; got to go to school; got to obey the law. You do all that, a year from now, none of this happened."* (Italics added)

At the hearing on his probation violation, his probation officer testified he met with appellant before he entered the DEJ program, explained the terms and conditions, and also explained that he "pretty much [had] to be perfect" for one full year to comply

with DEJ. "You know, obey your parents, attend school regularly, obey all school rules. If you have drug orders, you will be randomly drug tested. You cannot test dirty for anything. If he's going to go to Blanton Academy, he has to successfully complete Blanton Academy. *I told him the ramifications, if you will, or what the possible other dispositions or options that you were to face if you were to fail DEJ*." (Italics added)

Appellant violated probation because he tested positive for marijuana in September 2011 and January 2012; he failed to complete the juvenile work program; he failed to attend school regularly, and he was dropped from Blanton Academy because he failed to comply with attendance requirements. These violations were hardly "minor," they did not involve grey areas or unexplained consequences of his probation conditions, and instead reflect his failure to comply with the most basic requirements of his probation.

The entirety of the record thus indicates appellant was fully advised of his eligibility and suitability for DEJ, the terms and conditions of his continuation in the DEJ program, what he had to do to successfully complete probation, and what conduct would result in violating probation and DEJ.

## III. Determination of the Factual Basis for Appellant's Admissions

Appellant next contends his admissions are invalid because the court failed to find a factual basis for the four counts alleged in the juvenile petition. Appellant concedes his attorney stipulated to a factual basis, but asserts the court was required to conduct an independent review of the record to determine if there was a factual basis for each allegation. Appellant further asserts the court's failure to conduct an independent review was prejudicial because there was no factual basis for any of the allegations in the petition.

### A. Factual Basis

Rule 5.778(f)(6) (formerly rule 1487(f)(6)) provides that when a minor admits or enters a no contest plea to the allegations in a juvenile petition, the court must make a

finding that there is a factual basis for the admission or plea. This procedural is analogous to the factual basis requirement in adult criminal pleas, as set forth in section 1192.5.

"[T]he trial court must garner information regarding the factual basis either from the defendant or defense counsel. If the trial court examines the defendant regarding the factual basis for the plea, the court may have the defendant describe the conduct that gave rise to the charge [citation], or may question the defendant regarding the detailed factual basis described in the complaint or written plea agreement. [Citation.] If the trial court inquires of defense counsel regarding the factual basis, counsel may stipulate to a particular document that provides an adequate factual basis, such as a complaint, police report, preliminary hearing transcript, probation report, grand jury transcript, or written plea agreement." (*People v. Holmes* (2004) 32 Cal.4th 432, 442.)

"[A] trial court possesses wide discretion in determining whether a sufficient factual basis exists for a guilty plea [or admission]. The trial court's acceptance of the … plea, after pursuing an inquiry to satisfy itself that there is a factual basis for the plea, will be reversed only for abuse of discretion. [Citation.] A finding of error under this standard will qualify as harmless where the contents of the record support a finding of a factual basis for the … plea. [Citations.]" (*People v. Holmes*, *supra*, 32 Cal.4th at p. 443; *People v. Wilkerson* (1992) 6 Cal.App.4th 1571, 1576.)

For example, in *In re Michael B.* (1980) 28 Cal.3d 548, the trial court failed to enter a finding that there was a factual basis for the minor's admission of forgery allegations. The California Supreme Court found there was no reasonable likelihood of prejudice because the probation report set forth the details of the offense, the court read the charging allegations to the minor at the hearing, and the minor admitted the allegation. (*Id*. at p. 556.) "Under the circumstances, the trial court unquestionably would have found that there was a factual basis for [the minor's] admission." (*Ibid*.)

In *People v. Mickens* (1995) 38 Cal.App.4th 1557, the attorneys stipulated to a factual basis for the defendant's guilty plea. On appeal, however, the defendant argued the stipulation was insufficient. *Mickens* concluded any error was harmless because the probation report "could have supported a factual basis finding." (*Id.* at pp. 1564-1565.)

## B. Analysis

Appellant's argument that the court failed to make the appropriate finding for a factual basis is meritless. Appellant's attorney stipulated to a factual basis in both the written advisement and waiver and before the court. The probation report provided an extensive narrative of facts and circumstances of the allegations in the petition, as summarized above, and the court later stated it had reviewed that report.

Appellant acknowledges these circumstances, but asserts a juvenile court must disregard a stipulation from the juvenile's attorney and conduct an independent review of the entire record to determine the existence of a factual basis for a juvenile's admissions. Appellant's novel argument is based on an opinion from the Third District, but the California Supreme Court granted review in that case, and it may not be cited. (*In re Alonzo J.*, review granted Jan. 23. 2013, S206720.)

In any event, there was no evidence of any tension or disagreement between appellant and his attorney. While his attorney explained appellant's initial equivocation about DEJ, appellant indicated his decision to accept the program. The juvenile court accepted the stipulation about the factual basis from appellant's attorney, and later reviewed the probation report, which set forth the circumstances of the allegations in the juvenile petition. To the extent the court should have conducted a more extensive inquiry, any error is harmless given the existence of the probation report's factual statement.

22.

## IV. <u>Designation of Offenses as Felonies</u>

Appellant's final issue is that the juvenile court abused its discretion when it found two counts alleged in the petition, and admitted by appellant, were felonies instead of misdemeanors.

### A. <u>Background</u>

As set forth, *ante*, appellant admitted the four allegations in the juvenile petition: count I, attempted residential burglary (§§ 664/460, subd. (a)); count II, carrying a loaded firearm (§ 12031, subd. (a)(2)(F)); count III, active participation in a criminal street gang (§ 186.22, subd. (a)); and count IV, misdemeanor vandalism (§ 594, subd. (b)(2)(A)). (CT 1-4, RT 5-7) The parties agree that counts II and III were "wobbler" offenses, i.e., punishable alternatively as felonies or misdemeanors if committed by an adult.

On July 23, 2012, after the court found appellant in violation of DEJ, it adjudged him a ward of the court, set his maximum confinement time, and committed him to Camp Erwin Owen. The court stated it had reviewed appellant's case in "some detail," and found that counts II and III were felonies and not misdemeanors.

### B. <u>Analysis</u>

Welfare and Institutions Code section 702 provides, in part: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." Thus, a decision to treat an offense punishable as either a misdemeanor or a felony is within the court's broad discretion. (See § 17, subd. (b).) Although the juvenile court must declare a wobbler offense as either a misdemeanor or felony (*In re Manzy W.* (1997) 14 Cal.4th 1199, 1209), the court need not state its reasons for making its determination. (*In re Jacob M.* (1989) 210 Cal.App.3d 1178, 1180-1182.)

On appeal, the burden is on the party attacking the court's determination of a wobbler offense " 'to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to

23.

achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.]" (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978.)

Appellant apparently concedes the court complied with *Manzy W.*, *supra*, 14 Cal.4th 1199 since it expressly found counts II and III were felonies and not misdemeanors, and was thus aware of its discretion. However, appellant insists the court abused its discretion when it made those findings because there was no evidence to support the two counts. In making this argument, however, appellant solely relies on his previous assertions addressed in section III, *ante*, which in turn were based on *Alonzo J.*—that the juvenile court was required to independently review the entire record to determine if there was a factual basis for appellant's admissions. He does not cite to any authorities regarding the juvenile court's duties under Welfare and Institutions Code section 702. We have already rejected appellant's *Alonzo J.* arguments, and similarly reject appellant's renewed application of those arguments.

## DISPOSITION

The dispositional order is affirmed.